607 A.2d 866

Thomas W. HITCHINGS, Petitioner,

v.

**PENNSYLVANIA STATE ETHICS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 9, 1991.

Decided April 20, 1992.

Regis J. McNally, for petitioner.

Robin M. Hittie, Asst. Counsel, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

PALLADINO, Judge.

Thomas W. Hitchings appeals an order of the State Ethics Commission (the Commission) which concluded that Hitchings violated subsections 3(a) and 4(a) of Pennsylvania's ethics act governing public officials and public employees (Ethics Act), Act of October 4, 1978, P.L. 883, 65 P.S. §§ 403(a) and 404(a).[1]

On August 24, 1988, the Commission began an investigation of the conduct of Hitchings for possible violations of the Ethics Act. Without a hearing, the Commission issued an order that concluded that Hitchings violated the Ethics Act. This court vacated that order and remanded the case to the Commission for a hearing. *Hitchings v. State Ethics Commission*, 128 Pa.Commonwealth Ct. 469, 563 A.2d 988 (1989). Following a hearing, the Commission issued an order dated December 14, 1990 that concluded that Hitchings violated subsections 3(a) and 4(a) of the Ethics Act,[2] and which imposed a treble penalty of $1,950 on Hitchings.

The facts of this case, as reported by the Commission in its decision dated December 14, 1990, are as follows. Between 1981 and 1988, Hitchings served as a fire captain assigned as an investigator with the Arson Strike Team in Pittsburgh. Finding of Fact 1. As part of his job responsibilities, Hitchings supervised the investigation of fires, Finding of Fact 9.i.(1), and had authority to make a final determination as to the cause and origin of fires, Finding of Fact 9.s.

On February 5, 1984, a fire occurred at the Arcade Theater in Pittsburgh, Finding of Fact 2, which Hitchings investigated. Finding of Fact 6. His investigation activi-

1. This case was re-assigned to the author on April 3, 1992.

2. Subsection 3(a) of the Ethics Act states "[n]o public official or public employee shall engage in conduct that constitutes a conflict of interest." 65 P.S. § 403(a). Subsection 4(a) requires, among other things, that public employees annually file statements of financial interest with the entity for which they are employed. 65 P.S. § 404(a).

ties included personally appearing at the site of the fire while the fire was in progress, Finding of Fact 16.c., inspecting the site of the fire to determine its cause, Finding of Fact 16.d.-v., and filing a report dated March 5, 1984 regarding the fire with the Chief of the Pittsburgh Fire Department. Finding of Fact 6.c.-d. Hitchings utilized his expertise as an arson investigator and exercised discretion in drafting his analysis of what caused the fire. Finding of Fact 9.h.(2)(d).

Subsequently, one of the owners of the Arcade Theater, Stanley Kramer, filed a defamation lawsuit against KDKA–TV, a local television station, claiming that KDKA–TV had reported the fire was caused by arson and the owners of the theater may have been involved. Finding of Fact 3. In preparing KDKA–TV's defense to Kramer's lawsuit, counsel to KDKA–TV hired Hitchings at a rate of $50 per hour to testify about whether the fire at the Arcade Theater was caused by arson. Finding of Fact 10.b.(2).

Though the Commission made no finding with respect to whether Hitchings ever did in fact testify in court on behalf of KDKA–TV, the Commission did find that Hitchings prepared a report on the cause of the fire [3] and consulted with defense counsel. Services rendered included: (1) a two-hour meeting with counsel on March 18, 1986, a date Hitchings' personnel records indicate he worked a full day for the City of Pittsburgh; (2) using two hours for preparation of a report on March 24, 1986, a date Hitchings' personnel records indicate he worked a full day for the City of Pittsburgh; (3) a nine hour consultation on March 31, 1986, a day Hitchings took a vacation day. Findings of Fact 17, 20 and 22. In preparing the report on the cause of the fire, Hitchings relied on, among other items, his own investigative file on the Arcade Theater fire which included a private, confidential memorandum he presented to Charles

3. The Commission found that the report was prepared because of a practice in the United States District Court for the Western District of Pennsylvania (the court that heard Kramer's defamation suit) that witnesses in civil litigation file a pre-trial statement. Commission Decision, at 31.

Lewis, Chief of the Pittsburgh Fire Department. Findings of Fact 6 and 22.a.; R. at 363a–79a. Counsel to KDKA–TV ultimately paid Hitchings $650 for his services. Finding of Fact 7.

Hitchings appeals from the order of the Commission that concluded, on the basis of the above facts, that he violated the Ethics Act. The principal issue presented on appeal is whether a fire department captain in charge of arson investigations is a public employe as defined by the regulations promulgated pursuant to the Ethics Act. Collateral to that issue is whether the Ethics Act as applied violated constitutional rights to equal protection, whether the Commission's order constituted an unconstitutional intrusion into the judicial power of this Commonwealth and the United States, and whether the Commission commingled its prosecution and adjudicative functions, thereby violating Hitchings' right of procedural due process.

Our scope of review in considering an order of the Commission is limited to determining whether constitutional rights have been violated, an error of law was committed, and necessary factual findings are supported by substantial evidence. *Phillips v. State Ethics Commission,* 79 Pa.Commonwealth Ct. 491, 470 A.2d 659 (1984). Because Hitchings raised no substantial evidence arguments, we confine our analysis to whether it was an error of law for the Commission to conclude that Hitchings was a public employe subject to the Ethics Act, and whether any constitutional claims have merit.

We note initially that the Commission found that Hitchings violated provisions of the Ethics Act which apply to public officials and public employes. *See* subsections 3(a) and 4(a) of the Ethics Act, 65 P.S. §§ 403(a) and 404(a) (requiring public officials and public employes not to engage in a conflict of interest, and to file a statement of financial interests, respectively). The Commission concluded that Hitchings was a public employe as defined in the Ethics Act and the Commission's corresponding regulations.

The regulations provide the following definition:

*Public employe—*

(i) The term includes an individual:

(A) Who is employed by the Commonwealth or a political subdivision who is responsible for taking or recommending official action of a nonministerial nature with regard to:

(I) contracting or procurement;

(II) administering or monitoring grants or subsidies;

(III) planning or zoning;

(IV) inspecting, licensing, regulating or auditing any person; or

(V) any other activity where the official action has an economic impact of greater than a de minimis nature on the interests of any person.

(B) Who meets the criteria of either subclause (I) or (II):

(I) The individual is:

(-a-) A person who normally performs his responsibility in the field without on-site supervision. . . .

51 Pa.Code § 1.1, "Public employe" definition.

The Commission asserts that Hitchings is a public employe because, under subsection (i)(A)(IV) and (V), his official actions of a nonministerial nature entail the "inspection" of fire sites and have an economic impact of greater than a de minimis nature, and because Hitchings satisfies subsection (i)(B)(I)(-a-). Assuming that Hitchings falls within the parameters of 51 Pa.Code § 1.1, Public employe definition, subsection (i), we nevertheless conclude that Hitchings is not a public employe by virtue of the regulatory provision at 51 Pa.Code § 1.1, Public employe definition, subsection (iv)(A).

Subsection (iv)(A) states that detectives are not public employes. Hitchings asserts that because his duties are those of a detective, he is not a public employe.

Neither the Ethics Act nor the Commission's regulations define the term "detective." Under the rules of statutory construction of this Commonwealth, the term would then be given a meaning according to its common and approved

usage. Subsections 1903(a) and 1502(a)(1)(ii) of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1903(a) and 1502(a)(1)(ii).

To determine the common and approved usage, we turn to the dictionary, which defines "detective" as:

> [O]ne employed or engaged in detecting lawbreakers or getting information that is not readily or publicly accessible: an investigator of private esp. illicit or criminal affairs: a plainclothes police officer.

Webster's Third New International Dictionary 616 (1986).[4] Accordingly, the issue we must decide is whether, under the facts as found by the Commission, Hitchings is a detective as defined above.

The Commission found that Hitchings' duties involved surveying the scene of a fire to determine where the fire started and its cause (Finding of Fact 9.f.(1)); filing two reports detailing the basic elements of the investigation and a summation of his findings in a particular case (Findings of Fact 9.h.(1) and (2)(c)); supervising all activities regarding the investigation of the fire (Finding of Fact 9.i.(1)); interviewing witnesses in the field (Finding of Fact 9.r.(1)); referring suspicious fires to federal or other agencies (Finding of Fact 9.r.(3)); and making and forwarding to the fire

---

**4.** We note that neither the definition of "detective" provided in Webster's nor the regulations of the Commission indicates that a detective must be a member of a police force. That Hitchings was employed by the City of Pittsburgh Fire Department thus does not preclude his being classified as a detective. We further note that certain subsections within the Commission's definition of public employe distinguish between employes who are members of a police force and those who are not. *See, e.g.,* 51 Pa.Code § 1.1, Public employe definition, subsection (iii)(D) (referencing "police chiefs"); 51 Pa.Code § 1.1, Public employe definition, subsection (iv)(A) (referencing "police officers"). The term "detectives" in 51 Pa.Code § 1.1, Public employe definition, subsection (iv)(A), however, is not preceded by the term "police", thus presenting the inference that the Commission intended for detectives of any public employer not to be a public employe.

Additionally, while the precise term "detective" is not defined in section 2 of The Private Detective Act of 1953, Act of August 21, 1953, P.L. 1273, *as amended,* 22 P.S. § 12, the term "private detective business" is defined in subsection 2(b)(6) of that act, 22 P.S. § 12(b)(6), as including any investigation of "[t]he causes and origin of, or responsibility for, fires...."

chief a final determination as to the cause and origin of a fire (Finding of Fact 9.s.).

We conclude that these duties render Hitchings a detective as that term is used in the Commission's regulations. Both the definition of "detective" and Hitchings' duties center on performing an "investigation" and on "detecting lawbreakers" through the use of information not readily accessible to the public.

Many of the Commission's findings themselves use the term "investigate" to describe Hitchings' work duties. *E.g.* Findings of Fact 9.e.(1) (Hitchings has "duties in the area of fire arson investigation"); Finding of Fact 9.f.(1) ("The investigator surveys a scene...."); Finding of Fact 9.h.(1) (Hitchings was required to file a report "containing the basic elements of the investigation"); Finding of Fact 9.i. ("Hitchings spent the majority of his time as a full-time fire arson investigator and investigated [the Arcade Theater] fire"); Finding of Fact 9.u. ("A fire arson investigator has the first opportunity to review a fire scene before access is available to the general public").

Moreover, as a captain in the City of Pittsburgh Fire Department responsible for arson investigations (Finding of Fact 9.e.(1)), Hitchings was charged with the task of "detecting lawbreakers" who commit the crime of arson. *See* Finding of Fact 9.v. (Hitchings testified at the criminal trial as to the Arcade Theater fire).

Finally, the record clearly indicates that Hitchings used information not available to the public in performing his investigative duties. Attached to the memorandum on the Arcade Theater fire which Hitchings filed with the Chief of the City of Pittsburgh Fire Department was a confidential laboratory report regarding samples of charred wood. *See also* Finding of Fact 9.u., above.

Because the duties of Hitchings are encompassed by the term "detective," we hold that Hitchings is not a "public employe" under the Ethics Act as implemented by the Commission's regulation at 51 Pa.Code § 1.1, "Public em-

ployee" definition. Because only public employees are subject to the Ethics Act, we further hold that the Commission erred by concluding that Hitchings violated sections 3(a) and 4(a) of the Ethics Act, 65 P.S. §§ 403(a) and 404(a).

Because we have determined that Hitchings is not subject to the Ethics Act, we need not address his constitutional arguments.

The order of the Commission is reversed.

PELLEGRINI, J., did not participate in the decision in this case.

## ORDER

AND NOW, April 20, 1992, the order of the State Ethics Commission in the above-captioned matter is reversed.

CRAIG, President Judge, dissenting.

The main issue in this case is whether a city fire department captain, functioning as an arson investigator who investigated the origin of a theatre fire and later received a fee from private attorneys for a consultant's report based upon his official investigation, has violated the Ethics Act as a public employee who has used confidential information from his public position to obtain financial gain other than the public compensation due him by law.

In bringing this appeal from an order of the State Ethics Commission holding that he had committed such a violation, Thomas W. Hitchings, the former fire captain, has also raised constitutional questions as to (1) whether classifying him as a public employee subject to the Act is a violation of his equal protection rights, (2) whether the Commission's holding amounts to an unlawful intrusion upon judicial functions, and (3) whether there was a violation of his due process rights by a commingling of prosecutorial and adjudicative functions on the part of the Commission's General Counsel.

## The Act

Because all of the relevant events in this case occurred during the period of 1984–1986, before the Ethics Act was reenacted and amended by the Act of June 26, 1989, P.L. 26, the governing statute is the original form of the Ethics Act of Oct. 4, 1978, §§ 1–13, formerly 65 P.S. §§ 401–413.

Subsection 3(a) of the Act provided:

*Section 3.  Restricted Activities:*

(a) No public official or public employee shall use his public office or any confidential information received through his holding public office to obtain financial gain other than compensation provided by law for himself, a member of his immediate family or a business with which he is associated.

The commission's conclusion that Captain Hitchings was subject to the Act also resulted in a holding that he had violated Section 4, requiring the filing of an annual statement of financial interests by persons covered.

## The Facts

The facts, as found by the commission and well stated in the majority opinion, are essentially undisputed.  Hitchings was serving as a fire captain in the Fire Department of the City of Pittsburgh, assigned to the Bureau of Fire Prevention and functioning as arson investigator in charge of all arson investigations.  (407a) He supervised the investigation of fires and had authority to make a final determination as to the cause and origin of fires.  (397a)

With respect to a February 5, 1984 fire at the Arcade Theatre in Pittsburgh, he investigated by personally appearing on the fire scene during the fire and afterwards, by inspecting the site to determine cause, and by filing his report with the Fire Chief on March 5.

Later, in connection with a defamation suit by one of the theatre's owners against a television station which had allegedly implicated the owners with an arson origin of the fire, the attorneys for that plaintiff hired Hitchings to

consult and possibly testify as to the fire origin, at $50 per hour.

Although there is no finding that Hitchings ever testified, the attorneys paid him $650 for 13 hours of consultation and preparation of a report for them, intended for pre-trial purposes. Hitchings did that work for them over three separate dates. On one of those dates, during which he had a two-hour daytime meeting with legal counsel, his city personnel records showed him working his full daytime shift for the city. On the second date, a city working day for him, he used two hours to prepare the report, but there was no evidence or specific finding that his report preparation was during his city working hours. His nine-hour consultation with the attorneys was on a third day, which he took as a vacation day from the city.

In preparing the report for the attorneys, Hitchings relied, at least in part, upon his own official investigative file that included a private, confidential memorandum from him to the Fire Chief concerning the fire.

### Ethics Act Application and Interpretation

The facts show that, if the Ethics Act applies to Captain Hitchings, he did violate the section 3(a) prohibition against using "his public office" and "confidential information received through his holding public office to obtain financial gain" for himself "other than compensation provided by law...."

However, the violation was a technical and innocent one, as soundly indicated by the dissent of Ethics Commissioner Dennis C. Harrington opposing imposition of the treble penalty in the amount of three times the fee received.

According to the commission's findings, the Pittsburgh City Law Department apparently advised that Hitchings could properly bill for expert witness services performed on personal time, with notice to the city officials for approval, in view of the truth-finding benefits to the courts, for which services the city should not have to pay.

Moreover, there is no indication whatsoever in the findings or the record that Hitchings had any predisposition in favor of the theatre owners at the point of developing his official report to the Fire Chief. The facts show that the private attorneys did not approach him until after he had concluded his official report.

Despite these considerations, this court must confront the threshold question: Does the public position in this case fall under the Ethics Act's coverage definition of "public employee"? Because the "public employee" definitions in the original Act and in the reenactment of 1989 are both the same as they relate to facts like those here, and because the commission regulations on that point also remain unchanged, this court's interpretation is important for the present and the future, as well as for the history of this case.

The pertinent provisions of the "public employee" definition, in section 2 of the Act, are as follows:

*Section 2. Definitions*

.        .        .        .        .

"Public employee." Any individual employed by the Commonwealth or a political subdivision who is responsible for taking or recommending official action of a non-ministerial nature with regard to:

.        .        .        .        .

(4) inspecting, licensing, regulating or auditing any person; or

(5) any other activity where the official action has an economic impact of greater than a de minimis nature on the interests of any person.

The implementing regulations of the Commission, at 51 Pa.Code § 1.1, repeat the above statutory definition and add the statement that a "public employee" is a person within the statutory definition who also meets the criteria of subclauses (I) or (II).

In subclause (I), a pertinent criterion is that the person must be one "who normally performs his responsibility in

the field without on-site supervision. In subclause (II), the pertinent criterion is that one who "[p]repares or supervises the preparation of final recommendations ..." or who "[m]akes the final technical recommendations."

The record includes a finding that a city report "reflects that Hitchings was in charge of all fire and arson investigations in the City and supervised the investigation team." (402a) As noted in the statement of facts above, he did "normally perform[s] his responsibility in the field without on-site supervision." 51 Pa.Code § 1.1(I) And his function was to make "the final technical recommendations." 51 Pa.Code § 1.1(II)

Accordingly, the record facts and findings, as to Hitchings' supervisory role and his fact-determination and conclusion-making functions as to fire origins, and the undeniable point—sharply illustrated by his sought-after services in the private litigation here—that, in the words of the statute, his "official action had an economic impact of greater than a de minimis nature on the interests of any person," Act § 2(5), lead to the conclusion that Hitchings role was that of a "public employee" subject to the Ethics Act.

However, he is also entitled to look to the provision at (iv)(A) of the commission's 51 Pa.Code § 1.1 definition, which is one of the listings of persons generally *not* considered public employees. It excludes:

(A) City clerks, other clerical staff, road masters, secretaries, *police officers*, welfare case workers, maintenance workers, construction workers, *detectives*, equipment operators and recreation directors. (Emphasis added)

Thus the final question as to coverage by the Act is whether Hitchings, in view of his investigatory function in relation to the crime of arson as well as to general safety concerns about fire causes, was exempt as a detective.

He clearly was not a police officer. Although he was authorized to bear a city-issued firearm, there is no finding that he had any power of arrest, nor any responsibility for law enforcement generally.

Neither the Act nor the ethics regulations define the exempted category of "detective." We therefore must turn to the common and approved usage of that term, as we are directed by the Statutory Construction Act, 1 Pa.C.S. §§ 1502(a)(1)(ii), 1903(a).

Certainly the common understanding of a detective is that it signifies the occupation of investigating wrongdoing, either as a member of a police force or as a private operative. A fire department officer, with supervisory responsibilities, and the duty of reaching conclusions as to fire origins for both arson and safety purposes, does not fit the common understanding of a detective's occupation.

Significantly, the commission's detective exemption is linked with positions not having the discretionary, judgmental and determination-reaching functions of Hitchings' position as a fire captain in charge of arson investigations; the jobs grouped with "detectives" include clerical staff, secretaries, caseworkers, maintenance workers, equipment operators and recreation directors—none of whose roles involve official action of an *economic* impact of "greater than a de minimis nature of the interests of any person," in the way that Hitchings' functions did. The economic factor is the key, because economic impact provides the incentive for corrupt solicitations by persons involved, and thus it is economic temptations which are subject to constraints by the Act. As noted above, the impact of Captain Hitchings' powers provided the very reason that building owners sought him to back them in their litigation.

Captain Hitchings' powers, rather than resembling those of a police detective, were very much like those of the claim settlement officer held by this court to be a "public employee" covered by the Ethics Act in *Phillips v. State Ethics Commission,* 79 Pa.Commonwealth Ct. 491, 470 A.2d 659 (1984). This court there, noting that Ethics Act coverage should be construed broadly and exclusions read narrowly, held that the settlement officer's powers to investigate and recommend the disposition of claims were determinative,

rejecting an attempted comparison to police officers and detectives.

Unlike police officers or detectives working their beats under the control of their supervisors, the captain's position here was one appropriately within the statute's express coverage of inspecting, regulating or auditing with a substantial impact upon economic interests.

Although the legislature, 25 years before the Ethics Act, defined "private detective business" to include the investigation of fires—in the Private Detective Act of 1953, Act of August 21, 1953, P.L. 1273, § 2 *as amended*, 22 P.S. § 12—that enactment had purposes and concerns wholly unrelated to the concerns of the legislature in the Ethics Act with respect to public officials.

Indeed, if the Private Detective Act of 1953 had any relevance here, it would serve only to indicate that, if arson investigation is sufficiently important to be subjected to an extensive licensure law when carried on by private persons, it certainly has sufficient importance, when carried on by a public official, to be subject to the Ethics Act and not to be exempt from it.

Captain Hitchings was subject to the Act, not exempt.

### Constitutional Claims

Certain constitutional issues are presented by counsel on Captain Hitchings' behalf.

The first claim is that applying the Act to this fire captain's public role is a discriminatory denial of equal protection of laws because, as the claim goes, volunteer fire company chiefs also investigate and rule upon arson matters and they are exempt under statutory language which formerly stated that the definition of "public official" did not include "any appointed official who receives no compensation...."

That theory is actually obsolete because, in 1981, before the events of this case, the Supreme Court pursued a similar analysis and, as a consequence, invalidated the no-

compensation exemption in *Snider v. Thornburgh,* 496 Pa. 159, 436 A.2d 593 (1981), holding that uncompensated school board members had to be subjected to the Act as fully as compensated school members. Hence, the Act has been judicially construed, in order to save its constitutionality, as covering public officials who receive no compensation. The distinction between paid and unpaid officials became legally non-existent before the events of this case. (The 1989 amendment codified the judicial ruling by deleting the offending non-compensation exemption. Act of June 26, 1989, P.L. 26, § 1)

As a further aspect of the equal protection defense, the petitioner contends that there is no rational basis for distinguishing between the expressly-excluded police officers and detectives, on the one hand, and Captain Hitchings' role on the other hand. This claim must fail because of the substantial distinctions stated above, particularly the higher rank, supervisory powers, and determination-making powers of Captain Hitchings' position, compared to the lesser powers of the detective or police officer on the beat.

The next claim is that applying the Ethics Act to govern his employment as an expert civil litigation witness amounts to an unconstitutional infringement on the judicial powers of the courts.

Of course, the plain words of the Act do not interfere with the practice and procedures of the courts, nor with the desires or aims of private attorneys. Testifying is not prohibited. A public employee such as Captain Hitchings is not exempt from subpoena. Nor is there anything in the ethics regulations which would bar the presentation of a report if duly subpoened, or if authorized by the department having control over the information gathered.

Thus the courts are not affected. All the Act does is prohibit the public employee from using his public office and confidential information, obtained for the public, for personal gain. Regulation of the ethics and the compensation of an executive branch municipal official subjects the judicial branch to no constraint whatsoever.

Nor is the fact that the ethics complaint here was filed by one Kramer, who was on the other side of the civil litigation from the party aided by Captain Hitchings, relevant to the application of the Act. The motives of complainants are of no moment if the facts, as here, show that the complaint is not frivolous. Cf. Act § 10.1, 65 P.S. § 410.1, in the amended law.

Finally there is the claim of denial of due process on the ground that the official role of the chief counsel of the commission unlawfully commingles prosecutorial and adjudicative functions.

Both the Act and the record in this case refute that commingling contention. Section 8 of the Act, 65 P.S. § 408, governing the investigations and prosecutions of the commission, clearly identifies the executive director, not the chief counsel, as the investigator and prosecutor. Under subsections (a) through (d), it is the executive director who is expressly empowered to conduct preliminary inquiries and further investigations. 65 P.S. § 408(a)-(d) Section 6, 65 P.S. § 406, makes the executive director responsible for the administrative operations and identifies the chief counsel only as the legal officer of the commission.

In view of the explicit vesting of the charge-initiating duties in the executive director, there is no contrary implication to be drawn from the mere fact that the statute and regulations describe the chief counsel as being part of the staff. Although Section 6(i) of the Act, 65 P.S. § 406(i), recognizes the chief counsel as being part of the staff, and the regulations confer investigation and prosecution responsibilities upon "the staff," 51 Pa.Code 2.32–2.36, the explicit statutory language summarized above, conferring the investigative and prosecutorial duties upon the executive director, shows that use of "staff" in the regulations is intended merely to distinguish those positions from the membership of the commission itself.

Throughout the record, from the start of the hearings mandated by this court, Executive Director John Contino functioned as prosecutor, along with his director of investi-

gations. Chief Counsel Dopko performed only the role of advising the commission. *Soja v. Pennsylvania State Police*, 500 Pa. 188, 455 A.2d 613 (1982) and *Dussia v. Barger*, are distinguishable, being cases in which the State Police Commissioner, as the final adjudicator, received preliminary evidence apart from that given to the court martial board (*Soja*) or actually initiated the charges. (*Dussia*)

Contrary to petitioner's contention that the chief counsel made evidence rulings, the record shows that the chief counsel, in every one of those instances, merely acknowledged the admission of exhibits where there was a stipulation or opposing counsel stated that there was no objection. (68a, 70a, 148a, 150a, 164a, 181a, 229a.)

The roles here were quite different from the cases involving commingling of roles by legal counsel; in those cases, counsel advising the adjudicative body was also the attorney conducting the prosecution by presenting evidence and otherwise functioning as the trial attorney against the charged party. *Cf. Horn v. Hilltown Township*, 461 Pa. 745, 337 A.2d 858 (1975); *English v. Northeast Board of Education*, 22 Pa.Commonwealth Ct. 240, 348 A.2d 494 (1975).

All the constitutional claims should be rejected.

## Conclusion

The decision of the commission should be treated as modified in accordance with the dissent of Commissioner Harrington and should be affirmed as so modified. As amended, subsection 9(c) of the Act, 65 P.S. § 409(c), now provides that "Treble damages shall not be assessed against a person who acted in good faith on the advice of legal counsel," as here. Disgorging the amount received should be all that is required.

McGINLEY and SMITH, JJ., join in this dissent.