613 A.2d 679

**ALPHA AUTO SALES, INC., Petitioner,**

v.

**DEPARTMENT OF STATE, BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, STATE BOARD OF VEHICLE MANUFACTURERS, DEALERS AND SALESPERSONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 18, 1992.

Decided Aug. 10, 1992.

Petition for Allowance of Appeal Granted Dec. 30, 1992.

Raymond P. Kaskimba, for petitioner.

Gerald S. Smith, for respondent.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

COLINS, Judge.

Alpha Auto Sales (Alpha) appeals from a decision of the Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons (Board) reversing the proposed adjudication and order of the hearing examiner, assessing on Alpha a $4,500 civil penalty and suspending Alpha's license to deal in used automobiles for 90 days.

Alpha is a licensed used car dealership. In 1988, Alpha purchased 24 Yugo automobiles from a New Jersey used car dealership which had purchased the vehicles from New Jersey new car dealerships. During 1988, Alpha sold at least nine of the 1988 Yugo vehicles to its customers, at all times representing that the vehicles were used cars. Alpha has never possessed a written franchise agreement with the manufacturer, importer, or distributor of Yugo vehicles to sell new Yugos. Neither has Alpha ever represented to anyone that it is a franchised dealer.

On April 25, 1990, the Board instituted disciplinary proceedings against Alpha, alleging that Alpha violated Section 10(12) of the Board of Vehicles Act (Act) [1] a total of nine times in 1988, by selling nine new vehicles without its having a written franchise agreement. A formal hearing was held before a hearing examiner on October 11, 1990.

The hearing examiner made the following relevant findings of fact:

4. In 1988, Respondent purchased twenty-four (24) Yugo automobiles from M & E Motors, a used car dealership in Neptune, New Jersey, for the purpose of reselling the automobiles at Respondent's dealership in Stroudsburg.

[1]. Act of December 22, 1983, P.L. 306, *as amended*, 63 P.S. § 818.-10(12).

5.   M & E Motors purchased each of the Yugo automobiles it sold Respondent from one of two New Jersey new car dealers:  Crown Motor Co., Inc. of Wall, N.J. or Woodlake Oldsmobile Yugo of Lakewood, N.J.

6.   Respondent sold nineteen (19) of the Yugo automobiles to consumers at its dealership in Stroudsburg, representing the vehicles as being "used cars," and advising the purchasers that the cars' manufacturer's warranty had already begun to run.

7.   Respondent obtained certificates of title from the Pennsylvania Department of Transportation, Bureau of Motor Vehicles ("PennDOT") for eighteen (18) of the Yugo automobiles before selling them to consumers.

8.   Respondent did not pay Pennsylvania sales tax on the Yugo automobiles it purchased from M & E Motors nor had Pennsylvania sales tax been paid prior to the automobiles' sale to consumers.

9.   Respondent has never had a franchise agreement with the manufacturer, importer or distributor of Yugo automobiles to sell them as new vehicles.

10.   Respondent obtained the Yugo automobiles in the normal course of its business, under which Pennsylvania sales tax is not paid by Respondent but is paid by the consumer at the time of sale.

The hearing examiner, in his proposed adjudication and order, concluded that the vehicles in question were not new vehicles under the Act.  Although the Board adopted all of the findings of fact of the hearing examiner, it concluded, based on its interpretation of the Act, that the Yugos were new vehicles. Thus, the Board determined that Alpha violated Section 10(12) of the Act by selling new vehicles without a written franchise agreement.

The issue before this Court is whether the Board erred in concluding, as a matter of law, that the vehicles were new vehicles under Section 10(12) of the Act, which defines the term "new vehicle" as "a new vehicle which has never been registered or titled in Pennsylvania or any other state on which a tax for education imposed by . . . the Tax Reform

Code of 1971[ ] has not been paid prior to the sale." 63 P.S. § 818.10(12).

■ At the outset, we recognize that "an administrative agency's expert interpretation of a statute for which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous." *Mormak v. Unemployment Compensation Board of Review,* 135 Pa.Commonwealth Ct. 232, 237, 579 A.2d 1383, 1385–86 (1990). Furthermore, "[o]ur scope of review of an administrative agency order is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. . . ." *Pritz Auto, Inc., v. Commonwealth of Pennsylvania, State Board of Vehicle Manufacturers, Dealers and Salespersons,* 113 Pa.Commonwealth Ct. 89, 93 n. 1, 536 A.2d 485, 487 n. 1 (1988) (citations omitted).

The Board has interpreted Section 10(12) of the Act to provide a two pronged test for determining whether a vehicle is a new vehicle. That test defines a new vehicle as: (1) a vehicle which has never been registered or titled in Pennsylvania or any other state which imposes a sales tax; and (2) one on which the sales tax has not been paid prior to sale to the consumer. The Board argues that a car is a new vehicle if the Pennsylvania sales tax has not been paid prior to the sale, even though the vehicle has been previously titled or registered in the dealer's name and held for the purpose of resale. Based on this construction of Section 10(12) of the Act, the Board determined that the vehicles sold by Alpha were new vehicles, because no sales tax had been paid on the vehicles prior to resale.

Alpha argues that the Board's construction of the statute is incorrect. Alpha asserts that a plain reading of the Act reveals a three pronged test to determine whether a vehicle is a new vehicle: (1) whether the vehicle is a new vehicle, (2) which has never been registered or titled in Pennsylvania or any other state which imposes a sales tax, and (3) on which tax has not been paid prior to sale. Under this construction,

Alpha argues that it was clearly selling used vehicles. It asserts that the Yugo vehicles in question do not meet the first prong of this test, because the vehicles were purchased from a used car dealership as used cars, the manufacturer's warranties had already begun to run and in some cases had expired, and the vehicles were, at all times, represented to consumers as used cars. We agree.

■ Where, as here, the words of a statute are clear and unambiguous, we may not disregard the letter of the statute under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Additionally, "[w]ords and phrases shall be construed according ... to their common and approved usage...." 1 Pa.C.S. § 1903(a).

■ "New" is defined in Webster's Third New International Dictionary 1522 (1981) as "(1) having existed or having been made but a short time: ... opposed to old." The text continues to state:

> NEW ... can apply to something very recently come into existence, employment, or recognition. NEW implies that the thing was not known, thought of, manufactured, or experienced before its advent or has only recently been acquired, employed, put to use, and so on (a *new* invention) (a *new* type of adding machine) (a *new* movie star) (a *new* experience) (a *new* pan) (a *new* baby) (a *new* president)[.]

*Id.* It is clear that the automobiles in question do not meet the above definition.

If the legislature had intended any vehicle not previously registered or titled which has not had sales tax paid prior to the sale to be a new vehicle, it would have been very easy to so provide in plain language. The legislature could have chosen the words *a* vehicle or *any* vehicle but, rather, chose to include in its definition of a new vehicle that the vehicle must also be new according to the common and approved usage of the word.

As the hearing examiner found, to ignore the portion of Section 10(12) of the Act requiring a new vehicle to be, in fact, a new vehicle and looking only to whether Pennsylvania sales

tax was paid, would lead to a situation where a car previously owned and used by a tax exempt, charitable volunteer fire company or religious organization would, when sold by such an organization, be considered a new vehicle.[2]  Such an outcome is inconsistent with the clear meaning of Section 10(12) of the Act.

Furthermore, the fundamental purpose of the Act is to protect the Commonwealth and the motoring public from fraudulent auto practices.  Thus, the Act provides that only dealers who possess a written franchise agreement may sell new vehicles.  Section 2 of the Act, 63 P.S. § 818.2.  Our review of the record reveals that Alpha did not engage in fraudulent practices and that the motoring public was not deceived.  As found by the hearing examiner and stipulated to by the parties, the Yugos sold by Alpha were, at all times, represented to consumers as used cars.  It was fully disclosed by Alpha that, despite their low mileage, the automobiles in question were used cars and that the manufacturer's warranties had either begun to run or fully expired.

■  Section 10(12) of the Act sets forth a three pronged test for determining whether a vehicle is a new vehicle:  (1) it must be a new vehicle;  (2) which has never been titled or registered in Pennsylvania or any other state which imposes a sales tax;  and (3) the tax has not been paid prior to sale.  The vehicles in question here clearly do not meet the first prong of this conjunctive test, because they were not new vehicles.[3] We, therefore, hold that the Board erred as a matter of law in holding that Alpha violated Section 10(12) of the Act.

Accordingly, the order of the Board is reversed.

## ORDER

AND NOW, this 10th day of August, 1992, the order of the Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons in the above-captioned matter is reversed.

2.  *See* Article II, Section 204 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7204(10).

3.  We need not address prongs two and three, because the first prong has not been met.