644 A.2d 153

ALPHA AUTO SALES, INC., Appellee,

v.

DEPARTMENT OF STATE, BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, State Board of Vehicle Manufacturers, Dealers and Salespersons, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 27, 1994.

Decided June 16, 1994.

Reargument Denied July 22, 1994.

354

Joseph R. Thomas, Philadelphia, Gerald S. Smith, Harrisburg, for State Bd. of Vehicle Mfrs.

Joyce McKeever, Harrisburg, for State Bureau of Professional and Occupational Affairs.

Pamella J. Raison, Camp Hill, for Dept. of the State.

Stephen A. Moore, Harrisburg, for amicus curiae—Pa. Automotive Ass'n.

Raymond P. Kashimba, Steven F. Potisk, Stroudsburg, for Alpha Auto Sales.

Before NIX, C.J., and ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is an appeal from an opinion and order of the Commonwealth Court which reversed an order of Appellant, The Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons (the "Board"), which had assessed a $4,500.00 civil penalty against Appellee, Alpha Auto Sales, Inc. ("Alpha"), and had suspended its used car dealer's license for ninety days.

Appellant Board is an administrative board charged with enforcing the Board of Vehicles Act, Act of December 22, 1983, P.L. 306, as amended, 63 P.S. §§ 818.1–818.28. Its duties include imposing appropriate administrative discipline upon licensees found to have violated the Act.

Alpha is a Pennsylvania business corporation which holds a vehicle dealer license issued by the Board for a location in Stroudsburg, Pennsylvania. Alpha was charged with violating Section 10(12) of the Board of Vehicles Act, 63 P.S. § 818.10(12), by selling new vehicles without possessing a written authorization or franchise agreement from the manufacturer. At all times relevant hereto, Alpha operated only as a used car dealership. More specifically, it has never had a franchise agreement with the manufacturer, importer or distributor of Yugo automobiles.

In 1988, Alpha purchased twenty-four 1988 Yugo automobiles from a used car dealer in New Jersey, which had acquired the Yugos from two new Yugo franchise dealers in New Jersey. The Yugos had not previously been in the hands of a consumer or titled for use in New Jersey. There is indication in the record that eight of the cars had odometer readings under fifty-two miles (see Appellant's brief at p. 19), and it appears that the mileage on each car was slight and that most consumers would regard the cars as new for all practical purposes. On November 21 and December 7, 1988, Alpha obtained certificates of title for eighteen of the Yugos. Each of the certificates contained the notation: REGISTRATION NOT TO BE ISSUED—TAX UNPAID. Alpha did not pay sales or use taxes on any of the Yugos in either New Jersey or Pennsylvania. Alpha brought the Yugos into its Stroudsburg dealership and between November, 1988 and April 5, 1989, sold nineteen of the Yugos to consumers. At the time of the sales, Alpha represented that the cars were "used," and advised consumers that the manufacturer's warranty had begun to run. Alpha, of course, never had a franchise agreement with the manufacturer, importer or distributor of Yugo automobiles to sell them as new vehicles; and Alpha sold the Yugos in question as it sells autos in the normal course of its used car business in that Pennsylvania sales tax was not paid by Alpha but by the consumer at the time of sale.

Following a hearing, the Board's hearing examiner issued a proposed adjudication and order which recommended dismissal of the charges that Alpha had sold "new" vehicles, as

defined in Section 10(12) of the Act, improperly. On appeal, the Board adopted all of the findings of fact of the hearing examiner, but concluded, based on its own reading of the Vehicles Act, that the Yugos in question were "new" vehicles. The following statutory language supplies the legislature's definition of a "new vehicle": " . . . [T]he term 'new vehicle' shall mean a new vehicle which has never been registered or titled in Pennsylvania or any other state on which a tax for education [*i.e.*, a sales tax] . . . has not been paid prior to the sale." 63 P.S. § 81.10(12). The Board read this section to establish a two-prong test that defines a new vehicle as one: 1) that has never been registered or titled in Pennsylvania or any other state which imposes a sales tax, and 2) on which the sales tax has not been paid prior to sale to a consumer. Since no tax had been paid on Alpha's Yugos, they were held by the Board to be new vehicles. The Board entered an order levying a $4,500.00 civil penalty and a ninety day license suspension on Alpha.

On appeal, the Commonwealth Court reversed the Board on the grounds that Section 10(12) of the Act provides for a *three pronged* test for determining whether a vehicle is a new vehicle. The Commonwealth Court's three-pronged test requires that to be a new vehicle: 1) it must be a new vehicle; 2) it must be one which has never been titled or registered in Pennsylvania or any other state which imposes a sales tax; and 3) the tax has not been paid prior to sale. Relying on Webster's Third New International Dictionary's tautological definition of the word "new" as something "recently come into existence," the Commonwealth Court reasoned that the vehicles here in question were clearly not new. Moreover, the Commonwealth Court could not find any evidence in the record that Alpha engaged in fraudulent practices because it sold the cars as used and had disclosed the running of their warranties.

We granted the Board's petition for allowance of appeal in the instant case because the Board persuasively argued that the Commonwealth Court exceeded their proper scope of review here in reversing the Board and moreover that the

Commonwealth Court reversal thwarts legitimate legislative purposes and specifically ignores the dangers of "grey marketing," that is, the sale of vehicles out of franchise with no warranty protection and no risk of investment by the dealer, dangers to which consumers may be subjected. For the reasons set forth below, we reverse and reinstate the order of the Board.

■ What constitutes a "new" vehicle may, of course, vary depending on the circumstances. To paraphrase Justice Frankfurter's dissent in the famous case of *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), one would have to be singularly unmindful of the treachery and versatility of the English language to deny that as a mere matter of English the words "new vehicle" may carry more than one meaning. The proper place to begin the appropriate inquiry is not, however, with the dictionary but with due deference to the views of the regulatory agency directly involved in administering the statute in question. We have long held that the "contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, is entitled to great weight and should not be disregarded or overturned except for cogent reasons and unless it is clear that such construction is erroneous." *Federal Deposit Insurance Corp. v. Board of Finance and Review,* 368 Pa. 463, 471, 84 A.2d 495, 499 (1951). The instant Commonwealth Court opinion itself recognizes that "an administrative agency's expert interpretation of a statute for which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous." *Mormak v. Unemployment Compensation Board of Review,* 135 Pa.Commonwealth Ct. 232, 237, 579 A.2d 1383, 1385–86 (1990). Yet, no cogent reason was advanced here by the Commonwealth Court to justify either their clear departure from this sound principle of limited review or, substantially, to overturn the Board's quite reasonable view of what constitutes a "new vehicle."

In addition, the Board's view on this matter is supported by cogent reasons and a sensible public policy. The Board points

out that the Commonwealth Court decision, if allowed to stand, would open the door for a new "grey market" or a "second tier of new car dealers" which would have significant detrimental effects on the existing franchise system that assures that new vehicles sold in the United States were intended by the manufacturer for distribution in the United States. The current franchise system helps assure that vehicles distributed within the system are warranted, meet safety standards, and have parts and services available. The Commonwealth Court's decision, argues the Board, would permit a vehicle to be distributed in Pennsylvania by individuals not authorized to do so by the manufacturer. The manufacturer would have no control over this unauthorized distribution. A vehicle could be classified as used because it passed from one dealer's inventory to another. The potential result would be: uncertainty as to the quality of trademarked goods; lack of warranty protection to the consumer; unfair competitive risk to dealers legally operating within the franchise system; and the potential importation of vehicles that do not meet U.S. environmental and safety requirements and which are hence unauthorized by manufacturers for the United States market—this being the "grey market" problem. On this latter point see, *Direct Automobile Imports Association, Inc. v. Townsley,* 804 F.2d 1408 (5th Cir.1986).

Purchasers of vehicles of the type sold by Alpha would also lose the protection of Pennsylvania's Automobile Lemon Law, 73 P.S. § 1951 *et seq.,* if the Commonwealth Court's decision were allowed to stand. The Lemon Law requires manufacturers to provide a purchaser, at the time of original purchase of a *new* motor vehicle, with a written statement of his or her rights under the law—which include repair and return rights for the purchasers of *new* vehicles. See, 73 P.S. § 1952. In the instant case, vehicles purchased and resold by Alpha would not be "new" under the Commonwealth Court's view, and hence their purchasers would be left unprotected by the Lemon Law, a result clearly undesirable as a matter of public policy.

In short, the Board offers a sensible construction of the statute in question supported by cogent policy considerations. The Commonwealth Court was, under the circumstances, obligated to defer to the Board's view.

Accordingly, the order of the Commonwealth Court is reversed and the order of the Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons is reinstated.

FLAHERTY, J., did not participate in the consideration or decision of this case.

MONTEMURO, J., files a dissenting opinion.

MONTEMURO, J., is sitting by designation as a Senior Justice pursuant to Judicial Assignment Docket No. 94 R 1800 due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

MONTEMURO, Justice, dissenting.

I dissent and would affirm based on the reasons set forth in the Commonwealth Court Opinion. The Majority premises its opinion on: 1) the Commonwealth Court's disregard of the sound principle of limited judicial review of administrative agency decisions; and 2) public policy considerations. In concluding these vehicles are not "new vehicles" as defined in 63 Pa.S.A. § 818.10(12), the Commonwealth Court applied the proper *three* prong test and did not exceed its permissible scope of review.

## I) Standard of Review.

The Majority first contends that the Commonwealth Court departed from the "sound principle" that "an administrative agency's expert interpretation of a statute for which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous." Majority Op. at 357, *citing, Mormak v. Unemployment Compensation Bd. of Rev.*, 135 Pa.Commw. 232, 237, 579 A.2d 1383, 1385–86 (1990).

[The] Commonwealth Court's standard of review in an appeal from a decision of an administrative agency is limited to determining whether the agency's adjudication is in violation of the constitutional rights of the appellant, *an error of law has been made by the agency*, or the agency's findings of fact are not supported by substantial evidence. 2 Pa.C.S.A. § 704 (Purdon Supp. Pamphlet 1990); *Commonwealth Commission on Charitable Organizations v. Association of Community Organizations for Reform Now*, 502 Pa. 1, 463 A.2d 406 (1983).

*Chester Extended Care Center v. Commonwealth, Dept. of Pub. Welfare*, 526 Pa. 350, 355, 586 A.2d 379, 382 (1991) (emphasis added).

The Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons ("Board") applied the two prong test adopted by the Majority. The Commonwealth Court determined that the Board, by ignoring the requirement that a new vehicle must in fact be a *new* vehicle, erroneously concluded that the statute embodied a two prong test rather than a three prong test and committed an error of law. Therefore, in reversing the Board, the Commonwealth Court did not exceed its permissible scope of review.[1]

## II) Intention of the General Assembly.

The Majority next argues that "the Board's view on this matter is supported by cogent reasons and a sensible public policy." Majority Op. at 357. The Majority points to the consequences of adopting the Commonwealth Court's three prong test, highlighting "grey marketing" and the loss of consumer protection under Pennsylvania's Automobile Lemon Law, 73 Pa.S.A. §§ 1951—1963. While a court may consider "the consequences of a particular interpretation," such consid-

---

1. The Commonwealth Court stated, "[t]he issue before this Court is whether the Board erred in concluding, as a matter of law, that the vehicles were new vehicles under Section 10(12) of the Act...." *Alpha Auto Sales v. Dept. of State*, 149 Pa.Commw. 621, 624, 613 A.2d 679, 681 (1992). Thus, contrary to the majority's assertions, the Commonwealth Court did advance a cogent reason to justify the "departure from ... [the] principle of limited review." Majority Op. at 155.

erations are only appropriate "[w]hen the words of the statute are not explicit." 1 Pa.C.S.A. § 1921(c). By leaping directly to policy considerations and the resulting consequences of adopting the three prong test, the Majority disregards established principles of statutory construction.

## A. Explicit Words.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a); *Commonwealth v. Lurie,* 524 Pa. 56, 60, 569 A.2d 329, 331 (1990). "When the words of a statute are clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* at § 1921(b); *Walker v. Fennell,* 426 Pa.Super. 469, 472, 627 A.2d 771, 773 (1993). Only "[w]hen the words of a statute are not explicit," may a court ascertain the intention of the General Assembly by considering:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be obtained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) *The consequences of a particular interpretation.*

(7) The contemporaneous legislative history.

(8) Legislative and *administrative interpretations of such statute.*

1 Pa.C.S.A. § 1921(c) (emphasis added); *Freeze v. Donegal Mutual Insurance Co.,* 412 Pa.Super. 305, 312, 603 A.2d 595, 598, *appeal denied,* 532 Pa. 656, 615 A.2d 1312 (1992).

"Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903(a); *Appeal of Hume Village,* 51 Pa.Commw. 465, 468, 414 A.2d 768, 769–70 (1980); *Township of Derry, Dauphin County v. Swartz,* 21 Pa.Commw. 587, 589, 346 A.2d 853, 855 (1975). It is a presumption of statutory construction "[t]hat the General Assembly intends the entire

statute to be effective and certain." 1 Pa.C.S.A. § 1922(b); *Jones v. W.C.A.B. (Midland–Ross Corp.)*, 148 Pa.Commw. 593, 597, 612 A.2d 570, 572 (1992), *appeal denied*, 533 Pa. 638, 621 A.2d 583 (1993). "Whenever possible, each word in a statutory provision is to be given meaning and not to be treated as surplusage." *In re Employees of Student Services*, 495 Pa. 42, 52, 432 A.2d 189, 195 (1981); *Habecker v. Nationwide Ins. Co.*, 299 Pa.Super. 463, 471, 445 A.2d 1222, 1226 (1982); *Fumo v. Hafer*, 155 Pa.Commw. 520, 525, 625 A.2d 733, 735 (1993).

The statute defines a new vehicle as "a *new* vehicle which has never been registered or titled in Pennsylvania or any other state on which a tax for education ... has not been paid prior to sale." 63 Pa.S.A. § 818.10(12) (emphasis added). It clearly and unambiguously defines a new vehicle as a *new* vehicle. As the Commonwealth Court stated, "[t]he legislature could have chosen the words *a* vehicle or *any* vehicle but, rather, chose to include in its definition of a new vehicle that the vehicle must also be new." *Alpha Auto Sales v. Dept. of State*, 149 Pa.Commw. 621, 626, 613 A.2d 679, 682 (1992) (emphasis in original). By adopting the two prong test, the Majority completely ignores the presence of the term "new," treating it as mere surplusage. As a result, the Majority eliminates a definitional requirement and violates a principle of statutory construction.[2]

Because the word "new" is not technical and has not acquired a peculiar and appropriate meaning, it "shall be construed according to ... [its] common and approved usage." 1 Pa.C.S.A. § 1903(a). Pennsylvania courts have generally used dictionaries to determine the common and approved usage of a term. *See Patricca v. Zoning Bd. of Adjustment of City of Pittsburgh*, 527 Pa. 267, 275, 590 A.2d 744, 748 (1991); *In re Stout*, 521 Pa. 571, 583–4, 559 A.2d 489, 495–6 (1989); *Love v. City of Philadelphia*, 518 Pa. 370, 374, 543 A.2d 531, 532 (1988); *McIntyre v. Board of Supervisors of Shohola Township*, 150 Pa.Commw. 15, 20, 614 A.2d 335, 337 (1992); *Hitch-*

2. Nowhere does the Majority explain its reasons for ignoring "new." Rather, the Majority glosses over this omission by shifting the focus to policy considerations.

*ings v. Pennsylvania State Ethics Comm'n.,* 147 Pa.Commw. 384, 607 A.2d 866 (1992); *Tobin v. Radnor Township Bd. of Comm'rs.,* 142 Pa.Commw. 567, 582–3, 597 A.2d 1258, 1266 (1991).

Following sound principles of statutory construction, the Commonwealth Court referred to Webster's Third New International Dictionary ("Webster's") to ascertain the common and approved usage of "new." Webster's defines "new" as "having existed or having been made but a short time: . . . as opposed to old." *Alpha Auto Sales,* 149 Pa.Commw. at 626, 613 A.2d at 682. The Commonwealth Court then applied this definition to the statute and concluded that the vehicles were in fact not "new."

## B. Factors indicating Legislative Intent.

Even if the words of the statute were not explicit, an examination of the factors listed in 1 Pa.C.S.A. § 1921(c) would still reveal the General Assembly intended a three prong test. Prior to 1984, when the present statute took effect, new vehicles were defined as:

> [m]otor vehicles which have never been registered or titled in Pennsylvania or any other state and on which a tax for education . . . has not been paid prior to such sale.

63 Pa.S.A. § 805(2)(xvi) (repealed January 1, 1984), *quoted in D & B Auto Sales v. Commonwealth, Dept. of State,* 29 Pa.Commw. 113, 116, 370 A.2d 428, 430 (1977). This statute established a two prong test defining a new vehicle as one: 1) that has never been registered or titled in Pennsylvania or any other state which imposes a sales tax; and 2) on which the sales tax has not been paid prior to sale to a consumer. *Id.* 29 Pa.Commw. at 118–9, 370 A.2d at 431.

Effective January 1, 1984, the definition of a "new vehicle" was amended to its present form. The only difference is that a new vehicle must now be a *new* vehicle and not just a "motor" vehicle. "A change in the language of a statute ordinarily indicates a change in legislative intent." *Masland v. Bachman,* 473 Pa. 280, 289, 374 A.2d 517, 521–2 (1977). *See*

*also* 1 Pa.C.S.A. § 1921(c)(5) ("intention of the General Assembly may be ascertained by considering ... the former law"). If the General Assembly did not wish to require a new vehicle to be "new," it would not have added "new" to the definition. The additional requirement that a new vehicle be in fact a "new" vehicle and not just "a" vehicle or "any" vehicle exhibits a legislative intent to narrow the previous two prong definition. The majority's two prong test ignores this clear manifestation of legislative intent. Prior to the statute's amendment, courts applied the two prong test. *D & B*, 29 Pa. Commw. at 118–9, 370 A.2d at 430. Now, after the General Assembly specifically amended the statute to require that a new vehicle must also be "new," the Majority applies the very same two prong test, oblivious to the addition of the newness requirement. Rather than confront the statute's clear and unambiguous language or the obvious implications of the 1984 definitional change, the Majority resorts to tenuous policy considerations of potential consequences.

Before addressing the policy considerations on which the Majority relies, I would point out that these policy arguments focus on the implications of the Commonwealth Court's decision itself, rather than on the legal analysis employed to reach that decision. In this dissent, I agree with the Commonwealth Court's conclusion that the Board committed an error of law by applying a two prong test. I believe the General Assembly intended a three prong test. However, I do not necessarily agree with the Commonwealth Court's application of the three prong test and its conclusion that these are not new vehicles.[3]

3. The Commonwealth Court referred to Webster's to define "new" as "having existed or having been made but a short time: ... as opposed to old," *Alpha Auto Sales*, 149 Pa.Commw. at 626, 613 A.2d at 682, and concluded that "new" embodies some temporal element. This conclusion is further bolstered when one examines the definition of a "new motor vehicle" in the Automobile Lemon Law. 73 Pa.S.A. §§ 1951—1963.

The Automobile Lemon Law, enacted only three months after the Board of Vehicles Act, begins its definition of a "new motor vehicle" with the requirement that a new motor vehicle be *new and unused*. *Id.* at § 1952. The presence of "unused" joined to "new" by "and" indicates a legislative intent to add a meaning not encompassed by

The Commonwealth Court applied Webster's definition of "new" and concluded that the vehicles were in fact not "new vehicles." The vehicles at issue are 1988 Yugos. Alpha Auto Sales acquired these vehicles in November and December of 1988. While under Webster's definition, one might argue these vehicles had existed or had been made but a short time and therefore were new, I reiterate that I dissent from the Majority's complete disregard of the newness requirement itself, and not necessarily from the Majority's reversal of the Commonwealth Court decision and reinstatement of the Board's order. Although the Majority focuses on the consequences of the Commonwealth Court's decision and fails to reach the central issue of the proper legal analysis, I shall still address their policy arguments.

The Majority adopts the Board's contentions that the Commonwealth Court decision would "open the door for a new 'grey market.'" Majority Op. at 358. The grey market, which the Majority argues might lead to the "potential importation of vehicles that do not meet U.S. environmental and safety requirements," does not pose any problem. There is nothing illegal about the grey market. Grey market automobiles are already legally imported into this country. Procedures exist by which the

> importer of a noncomplying vehicle must post a bond with the Customs Service in an amount at least equal to the value of the vehicle to secure the completion of the required modifications. 19 C.F.R. §§ 12.73 and 12.80. When the importer has successfully modified the vehicle and demonstrated compliance with applicable safety and auto emission standards, the bonds are released.

*Direct Automobile Imports Ass'n, Inc. v. Townsley,* 804 F.2d 1408, 1409 (5th Cir.1986). Because the bond amount must at least equal the value of the imported vehicle, therefore tying up significant capital, it effectively acts as a barrier to the number of imported grey market vehicles. Affirming the

"new." Thus, it appears the legislature used "new" to encompass a temporal requirement, rather than a use requirement.

Commonwealth Court decision would not increase grey market imports.

The Majority claims a "vehicle would be classified as used because it passed from one dealer's inventory to another." Majority Op. at 155. This is simply untrue. The vehicles here passed from the inventory of a new car dealer to that of a used car dealer. They were sold and the warranties began to run. More occurred than just a mere shifting of inventory.

The Majority also contends that the Commonwealth Court's decision would create "uncertainty as to the quality of trademarked goods," eliminate "warranty protection to the consumer," and cause purchasers of this type of vehicle to "lose the protection of Pennsylvania's Automobile Lemon Law." Majority Op. 155. However, the Commonwealth Court concluded that these are used vehicles. The warranties began to run. The Automobile Lemon Law does not apply to used vehicles and used car dealers. Furthermore, lack of warranty protection and uncertainty as to quality always exist when purchasing a used car.

### III) Conclusion.

The Commonwealth Court correctly concluded that the Board committed an error of law when it applied an improper legal analysis. By focusing on the potential consequences of the Commonwealth Court decision rather than on the proper legal analysis, the Majority loses the forest for the trees. While these policy considerations are important, they should be considered in the context of applying the three prong legal test, and not as a means of skirting clear, explicit legislative intent.

This dissent obviously begs the question as to how to define "new." While Webster's definition is useful, it does not constitute the final word. I would suggest that in addition to considering the temporal connotations of "new," we examine, among other factors, whether the manufacturer's warranties have begun to run or have expired. However, on this issue I believe it would be appropriate to defer to the Board as the

expert administrative agency charged with the execution and application of the Board of Vehicles Act so it can define "new" in a manner consistent with its policy concerns.

For all of the above reasons, I would remand to the Commonwealth Court with instructions to remand to the Board for further proceedings consistent with this dissent.