638 A.2d 194

The AETNA CASUALTY AND SURETY COMPANY, the Standard Fire Insurance Company, and the Automobile Insurance Company of Hartford, Connecticut, Appellants,

v.

COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT, Appellee.

Supreme Court of Pennsylvania.

Argued April 5, 1993.

Decided March 7, 1994.

M. Hannah Leavitt and Arthur Selikoff, for Aetna, et al.

Heidi B. Hamman Shakely and Preston M. Buckman, for Ins. Dept.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

This appeal raises a question of first impression, whether Section 213 of the Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, as amended, 40 P.S. § 51, authorizes the Insurance Commissioner to order an insurance company to cease and desist from business practices that are not specifically prohibited by Act 78.[1] We hold that the Insurance Commissioner does not have the authority to order an insurance company to cease and desist from business practices that do not fall within the specific prohibitions set forth in Section 3 of Act 78.

During the period from September 18, 1989 through November 1, 1989, the Pennsylvania Insurance Department ("Insurance Department") conducted a market conduct examination of The Aetna Casualty and Surety Company, The Standard Fire Insurance Company, and The Automobile Insurance Company of Hartford, Connecticut (collectively, "Aetna").[2]

---

1. Act of June 5, 1968, P.L. 140, as amended, 40 P.S. §§ 1008.1–1008.11.

2. Aetna provides coverage to preferred automobile insurance risks through its Auto Rite I program written by The Aetna Casualty and Surety Company. Standard risks are covered in the Auto Rite II program written by The Automobile Insurance Company of Hartford,

The market conduct examination reviewed areas of Aetna's operations, including sales, advertising, licensing, rating, underwriting, claims practices, and complaint history. The purpose of the examination was to assess Aetna's compliance with Pennsylvania laws and regulations governing insurance.

On December 20, 1989, the Insurance Department issued a draft report of the market conduct examination to Aetna. The report summarized the findings of the Insurance Department, identified practices that were perceived to be violations of insurance statutes or regulations, and included recommendations regarding Aetna's practices. By letter dated January 19, 1990, Aetna responded to the report, expressing its agreement with several recommendations and its objection to others. Aetna requested a hearing on the report to address legal issues raised by the recommendations to which it objected. Aetna also expressed its willingness to resolve the legal issues in an informal manner.

After attempts to informally resolve the disputed issues failed, hearings were conducted on April 27, 1990 and May 22, 1990 by an examiner appointed by the Insurance Commissioner. On January 10, 1991, the Insurance Commissioner denied Aetna's objections and issued an Order and Adjudication which finalized the report. The report was upheld and amended to include an additional recommendation. The Insurance Commissioner directed that the report be made available for public inspection and ordered Aetna to cease and desist from engaging in the following practices:

(1) applying driving experience guidelines of Auto Rite I and II to drivers aged 16 to 25 years;

(2) using the HLPV [High Loss Potential Vehicles] list to nonrenew policies;

(3) using accidents occurring under other, separate policies to nonrenew a current policy; and

(4) passively nonrenewing policies written through an agent that terminates its agency contract.

Connecticut. Nonstandard risks are covered in the Auto Rite III program written by The Standard Fire Insurance Company.

The Insurance Commissioner directed the parties to submit memoranda relating to penalties for the violations proven at the hearings. On February 25, 1991, the Insurance Commissioner issued a second order directing Aetna to pay a civil penalty of $96,000. Aetna filed appeals from both orders to the Commonwealth Court.

The Commonwealth Court affirmed the Insurance Commissioner's order of January 10, 1991, as modified by the court's opinion. The court upheld the Insurance Commissioner's resolution of the issues addressing (1) whether driving experience is a valid underwriting criterion for principal operators, and (2) whether an insurer may nonrenew coverage on the basis of two accidents within 36 months of the policy anniversary date where the risk was insured under two different, sequential policies. The Commonwealth Court held that the use of driving experience as an underwriting criterion was properly prohibited as unlawful under Section 3(a)(1) of Act 78, and that Aetna's practice with regard to nonrenewal based on two accidents was unlawful under Section 3(b) of Act 78.

The Commonwealth Court held that the adjudication of the Insurance Commissioner was improper, however, insofar as it held Aetna to be in violation of Act 78 for refusing to renew policies on its High Loss Potential Vehicle ("HLPV") list and for failing to notify insureds upon agency termination. Nevertheless, the court upheld the order directing Aetna to cease and desist from those practices, concluding that Section 213 of the Insurance Department Act grants broad powers to the Insurance Commissioner to make recommendations regarding the adoption or cessation of business practices or plans which are adverse to the interests of policyholders. The court reasoned that this power extends to business practices or plans even when they do not fall within the specific prohibitions found in Section 3 of Act 78, which identifies instances in which an insurer is prohibited from cancelling, or refusing to write or renew a policy of automobile insurance.

The court vacated the second order of the Insurance Commissioner which imposed the civil penalties on Aetna. The court held that the Insurance Commissioner violated the

Administrative Agency Law in the method utilized in imposing the penalties. During the proceedings, the presiding officer indicated to the parties that a second proceeding would be scheduled to address the penalty issue. The Insurance Commissioner failed to direct that a penalty hearing be held and merely ordered the parties to submit memoranda supporting or opposing penalties. The court declined to define the proper administrative procedure for the assessment of penalties since the order was vacated. The case was remanded for further proceedings consistent with the court's opinion.

On April 15, 1992, Aetna filed a Petition for Allowance of Appeal seeking review of the Commonwealth Court's decision relating to its interpretation of Section 213 of the Insurance Department Act. The petition was granted on June 9, 1992. Aetna has limited the issue on appeal to this Court to whether the Insurance Commissioner has the authority under Section 213 to order an insurance company to cease and desist lawful business practices in order to protect policyholders.[3]

Section 213 provides in relevant part:

[The Insurance Commissioner] shall without notice at least once annually during the first five years of existence of every domestic insurance company, association and exchange, and thereafter every four years, or oftener if he deems it to be necessary, personally or by his deputy, actuary, or examiners, visit each domestic insurance company, association, and exchange, and thoroughly inspect and examine its affairs to ascertain its financial condition and its ability to fulfill its obligations, whether it has complied with the provisions of law, and any other facts relating to its business methods and management, and the equity of its plans and its dealing with its policyholders and claimants.

\* \* \* \* \* \*

The Insurance Commissioner shall cause to be prepared a report of the examination of any domestic insurance compa-

---

**3.** Aetna does not challenge the portion of the Insurance Commissioner's order relating to driver experience or the two-accident rule—practices which were found to be specifically prohibited by Act 78.

ny, association or exchange immediately upon completion of such examination. He shall submit such report to the domestic insurance company, association or exchange examined which shall have the privilege of objecting to any part of such report within thirty days from the receipt thereof. In the event any objection shall have been made, the Insurance Commissioner shall grant a hearing to the organization examined before making such report available for public inspection. Thereafter, he may, if he deems it for the interest of the public to do so, publish any such report or the results of any such examination as contained therein in one or more newspapers of the Commonwealth.

The market conduct examination report on Aetna is the first report to proceed through the administrative hearing process and appeal process. The Commonwealth Court acknowledged that it encountered difficulty in considering the validity of the Insurance Commissioner's order because of the novelty of the proceeding. This case presents us with the first opportunity to interpret the scope of the Insurance Commissioner's authority under Section 213. We will proceed initially to discuss the Insurance Commissioner's perception of her authority and analysis of the business practices which are the subject of this appeal.

## I. *High Loss Potential Vehicles (HLPV)*

Aetna has developed a list of high loss potential vehicles that it uses to underwrite risks. The HLPV list identifies three groups of vehicles that Aetna's underwriters perceive as high loss potential vehicles. The list is compiled from data obtained through automotive industry trade journals, the Highway Loss Data Institute, Insurance Services Office, the National Automotive Dealers' Association, the Insurance Institute for Highway Traffic Safety Administration, manufacturers' information, and advertising.

Group I vehicles include both two- and four-door vehicles with top speed potential in excess of 140 mph and acceleration potential of zero to 60 mph in less than seven seconds. Group II consists of vehicles with top speed potential between 110

and 130 mph and acceleration potential of zero to 60 mph in eight to ten seconds. Sports cars, utility vehicles and pickup trucks with exposed seating are included in Group II, but four-door vehicles are excluded. Group III includes vehicles with production rates of ten to fifty vehicles of a particular model per year that have a significantly higher than average cost of repair.

Aetna uses the HLPV list to assign new and renewal business to a rating program, i.e. preferred, standard, or nonstandard rates. An insurance policy may be written for vehicles on the HLPV list in the standard or nonstandard programs, but may not be written in the preferred program. Notably, the Insurance Commissioner has no objection to Aetna using the HLPV list to underwrite new business. The Insurance Commissioner's adjudication specifically states that Aetna may continue to refuse to write policies using its HLPV list.

The Insurance Commissioner determined that it was the use of the list to nonrenew insureds who had maintained a policy with Aetna prior to purchasing vehicles designated as HLPVs that was in violation of Section 3 of Act 78. Act 78 identifies specific reasons that may not be used by an insurer to refuse to renew an automobile insurance policy. The type of vehicle is not prohibited as a reason.

The Insurance Commissioner's adjudication stated the following Conclusions of Law:

8. Aetna's underwriting guidelines for Auto Rite I and II which result in the nonrenewal of policies on the basis that the vehicles insured thereunder appear on Aetna's "HLPV" list as high performance or low production vehicles violate Section 3 of Act 78.

9. Aetna's refusal to renew seven policies solely due to the type of vehicle insured under the policies was in violation of Section 3 of Act 78.

10. Aetna did not sustain its burden of proof that the vehicles on the HLPV list present a material increase in risk to Aetna warranting nonrenewal of an existing policy.

11. Any reason to nonrenew a policy not specifically prohibited by Act 78 may be used to nonrenew provided the insurer demonstrates that the reason is a good reason in that it is material to the risk and increases the hazard insured against.

The Insurance Commissioner interpreted Act 78 to prohibit non-renewals not only for the reasons enumerated therein, but also to prohibit nonrenewals for any other reason *unless* the insurer establishes that it is material to the risk and increases the hazard insured against.

The Insurance Commissioner's expansive interpretation of the conduct prohibited by Act 78 has its genesis in the Commonwealth Court's decision in *Samilo v. Commonwealth, Insurance Department,* 98 Pa.Cmwlth. 232, 510 A.2d 412 (1986). The transcript of the hearings on the market conduct examination evidences the Insurance Department's reliance on the *Samilo* decision. Dennis Shoop, Chief of the Market Conduct Division of the Insurance Department, testified as follows:

Q: And the reference that you made to ... auto characteristics.... What is the basis of that objection?

A: The basis of that objection was the good reason concept and various adjudications that defined a good reason to be one that materially increased the probability of loss. And we are not of the opinion that the mere fact that a vehicle appears on a list constitutes a material increase in probability of loss.

 \* \* \* \* \* \*

Q: ... you cite that the insurance department has established that the non-renewals are not good reasons and that includes non-renewals for HLPV that the insured risks includes a vehicle on the HLPV list. Could you just explain when the department established that high loss potential vehicle is not a good reason?

A: Commonwealth Court, through, I believe, the Similo (phonetic) decision defined or permitted non-renewal for any good reason not prohibited by the act. Through a

number of subsequent adjudications, the Commissioner has defined a good reason to be any such reason which increases the probability of loss.

(R. 300a, 308a–309a.)

In *Samilo,* the insured appealed from an order of the Insurance Commissioner affirming the Insurance Department's determination sustaining the insurer's decision not to renew his automobile insurance policy. The insurer had sent a notice of nonrenewal to the insured, stating that the policy would not be renewed due to the insured's use of alcoholic beverages and an accident involving the use of alcohol. The insured admitted at the administrative hearing that his consumption of alcohol was involved in the accident.

On appeal to the Commonwealth Court, the insured asserted that the insurer had relied solely on the accident in its decision not to renew the policy in violation of Section 3(b) of Act 78, 40 P.S. § 1008.3(b).[4] The insurer contended that the nonrenewal was not based upon the occurrence of a single accident, but upon the fact that the insured's alcohol use was involved in the accident. A witness for the insurer testified that the insured's use of alcohol while driving represented a materially increased risk of loss which the insurer did not wish to continue to insure. The Commonwealth Court concluded that the insurer's decision clearly was not based merely on the occurrence of the accident, stating:

Section 3 of Act 78 lists specific reasons which may not be used by an insurer to refuse to renew a policy of automobile insurance. Drinking while driving is not among those listed. Where some things are specifically designated in a statute, things ommitted [sic] should be understood as having been excluded; this principle is that expressed by the maxim "expressio unius est exclusio alterius." *Any good reason not specifically stated in Section 3 of Act 78 as a*

4. Section 3(b) states, "No insurer shall cancel or refuse to renew a policy of automobile insurance on the basis of one accident within the thirty-six month period prior to the upcoming anniversary date of the policy."

*reason for refusing to renew a policy may be considered by the insurer in its determination regarding renewal.*

98 Pa.Cmwlth. at 234, 510 A.2d at 414. (Emphasis added.)

The insured in *Samilo* challenged the nonrenewal of his insurance policy as a specific violation of Act 78. In analyzing whether the insurer's refusal to renew violated Act 78, the court examined the reason proffered by the insurer in its nonrenewal notice. The court's holding is limited by the issue that was raised in the appeal and has no import in the context of a market conduct study examination and report.

The Commonwealth Court noted that resolution of the issues in the instant case was ". . . further complicated by the Insurance Commissioner seizing upon language in . . . cases involving individual insurers to sustain her position in pursuit of a commendable, albeit over-inclusive, end." *Aetna Casualty and Surety Company v. Commonwealth, Insurance Department*, 146 Pa.Cmwlth. 394, 404, 606 A.2d 553, 558 (1992). The Court specifically rejected the notion that the *Samilo* decision was relevant to the legal inquiry posed in this appeal, stating:

> The Insurance Commissioner interprets *Samilo* to mean that if there is not good reason to non-renew, there is a violation of Section 3. This interpretation is erroneous.
>
> * * * * * *
>
> The Insurance Commissioner's interpretation by adjudication places the "lack of good cause" into Section 3 as a specific violation. This is the very interpretation rejected by *Samilo* and it is therefore rejected here. *Samilo* holds that if a good cause exists which is not expressly proscribed by Section 3, then that cause may be considered in an insurer's policy renewal decisions. It does *not* hold, or even imply, that any non-renewal which lacks good cause is automatically a violation of Section 3.

146 Pa.Cmwlth. at 404, 606 A.2d at 558–59. (Emphasis supplied.) (Footnote deleted.)

The Insurance Department asserts that the Insurance Commissioner was correct in determining that Aetna's underwrit-

ing practice utilizing the HLPV list was in violation of Section 3(b) of Act 78. The Insurance Department argues that the Commonwealth Court misconstrued the Insurance Commissioner's adjudication by describing it as "a blanket order by the Commissioner that an insurer's general reason, outside the specific prohibitions contained in Section 3 of Act 78, can never be good cause for non-renewal." The Insurance Department claims that, to the contrary, the Insurance Commissioner found only that Aetna had not produced evidence indicating that the vehicles on its HLPV list materially increased its risk of loss and found that Aetna's blanket use of the HLPV list was in violation of Act 78.

We do not underestimate the challenge that the Insurance Department and Aetna faced in confronting legal issues which have never been addressed by the appellate courts. For that reason, we cannot criticize the Insurance Department's attempt to rely on decisions of the Commonwealth Court that addressed Section 3 of Act 78. We must reject, however, the Insurance Department's argument that Aetna's use of the HLPV list in refusing to renew insurance policies is a violation of Act 78.

In *Samilo,* the insurer's refusal to renew at a time after the insured had been involved in an accident triggered the question whether the refusal to renew was based upon that event. It is unquestionable that a refusal to renew on that basis would have been a violation of Act 78. Since the insurer offered a reason separate from that prohibited by Act 78, it was imperative that the insurer's statement of reasons be examined to determine if it was a pretense. Unlike *Samilo,* the coincidence of a prohibited reason for nonrenewal and a nonprohibited reason does not exist in this case.

Section 3 is a definitive, inclusive statement of the reasons forbidden to be used by an insurer to cancel or to refuse to write or renew an automobile insurance policy under Act 78. An insurer's reason for nonrenewal, which is not specifically enumerated in Section 3, is not transformed into a violation of Act 78 upon the Insurance Commissioner's deter-

mination that an insurer failed to establish that the reason is related to a material increase in the risk of loss. Section 3 may be subject to expansion by the Legislature, but not by the Insurance Department or the judiciary.

The inquiry does not end here, however, because the Commonwealth Court concluded that "the scope of the market conduct report ... grants to the Commissioner broad powers to make recommendations regarding the adoption or cessation of 'business practices or plans' which are adverse to the interest of policyholders, even though they do not fall within the specific prohibitions found in Act 78, Section 3." *Aetna,* 146 Pa.Cmwlth. at 405, 606 A.2d at 559. The court stated:

> [Section 213] allows the Insurance Commissioner the latitude to regulate an insurance company by cease and desist orders, affirmative orders and, of course, confers discretion to proceed in appropriate cases to the penalty phase on those unlawful incidents uncovered by the market conduct investigation and report.
>
> We therefore hold that the Commissioner's January 10, 1992 adjudication is in error as stated because Aetna's use of its HPLV [sic] list is not, as a matter of law, a violation of Section 3 of Act 78. However, the Commissioner was correct in issuing her cease and desist order prohibiting Aetna from establishing and implementing a *blanket policy* of refusing to write business covering all vehicles listed on its HPLV [sic] list, although, in individual cases, certain vehicles on that list may have characteristics which provide a valid good cause for non-renewal.
>
> By virtue of this qualification, we by no means hold that ownership of any one of the vehicles on the HLPV list is always a good reason for non-renewal or that the Commissioner is in any way restrained from holding in individual cases that "good cause" for non-renewal has not been established or that the Commissioner is restricted from promulgating regulations which deal with the situation presented by the problem of the HLPV list.

*Id.,* 146 Pa.Cmwlth. at 406, 606 A.2d at 559. (Emphasis supplied.)

Aetna argues that the Commonwealth Court misconstrued Section 213 when it interpreted the statute to authorize the Insurance Department to order an insurer to terminate lawful business practices that are purportedly not in the policyholders' interests. Aetna contends that such an interpretation expands without limit the Insurance Department's authority to direct the affairs of insurers in a manner that will infringe upon their ability to manage their business. The Insurance Department concedes that Section 213 does not expressly confer cease and desist powers upon the Insurance Commissioner, but asserts that such authority is implied from the broad powers defined under Section 213.

In *Foster v. Mutual Fire, Marine and Inland Insurance Company*, 531 Pa. 598, 608, 614 A.2d 1086, 1091 (1992) cert. denied, —— U.S. ——, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993), we observed that

The General Assembly, in recognition of the specialized complexities involved in insurance generally, and in the regulation of this industry in particular, assigned the task of overseeing the management of that industry, in this Commonwealth, to the Insurance Department, the agency having expertise in that field. 40 P.S. § 41, et seq. The Insurance Commissioner, an appointed position pursuant to 40 P.S. § 42 is, therefore, afforded broad supervisory powers to regulate the insurance business in this Commonwealth, including the power to protect "the interest of insureds, creditors, and the public generally...." 40 P.S. § 221.1(c).

The Insurance Department's supervisory authority over the insurance industry is not without limitation, however. "[A]n administrative agency can only exercise those powers which have been conferred upon it by the Legislature in clear and unmistakable language." *Commonwealth, Human Relations Commission v. Transit Casualty Insurance Company*, 478 Pa. 430, 438, 387 A.2d 58, 62 (1978).

Section 213 grants the Insurance Department the power to inspect and examine an insurance company's affairs "to ascertain its financial condition and its ability to fulfill its obli-

gations, whether it has complied with the provisions of law, and any other facts relating to its business methods and management, and the equity of its plans and its policyholders and claimants." 40 P.S. § 51. The Insurance Commissioner is required to prepare a report upon completion of an examination and to submit the report to the insurance company. The insurance company is permitted to file objections to the report within thirty days from receipt. When objections are filed, the Insurance Commissioner must grant a hearing to the insurance company before the report is made available for public inspection. Thereafter, the Insurance Commissioner may publish the report in one or more newspapers of the Commonwealth if she deems it to be in the public interest.

The Insurance Department argues that it would be anomalous to construe Section 213 so that the Insurance Commissioner could not order an insurance company to cease and desist from practices found to be inequitable because the overall purpose of the section is to assure protection of policyholders through the examination process. This argument incorrectly presumes that the examination and reporting process contemplated in Section 213 is inadequate to protect policyholders. The carefully crafted legislative scheme brings four powerful forces to bear on the insurance industry in the conduct of its business affairs: (1) the scrutiny of the Insurance Commissioner; (2) the administrative hearing process; (3) the availability of the report for public inspection; and (4) the potential for newspaper publication of the report. We reject the notion that insurance companies will be unresponsive to these forces. Indeed, Aetna's acceptance of many of the Insurance Commissioner's recommendations at the outset demonstrates the impact of Section 213. We hold that Section 213 does not grant authority to the Insurance Commissioner to issue cease and desist orders relating to practices of insurance companies which are not prohibited by law.

## II. *Notification at Termination of Agency Relationship*

The second issue involves the duty of an insurer under Section 3 of Act 78 when an agent terminates the agency relationship. Section 3 provides, in part:

(c) For a period twelve months after notice of termination given to an agent:

(1) An insurer shall not cancel or refuse to renew existing policies written through the terminated agent because of such termination except as provided in clause (2).

(2) An insurer may cancel or refuse to renew only such policies as could have been cancelled or nonrenewed had the agency relationship continued.

(3) An insurer shall be obligated to pay commissions for such policies that are continued or renewed through the terminated agent, except where:

(i) the insurer retained ownership of the expirations of such policies; or

(ii) the agent has misappropriated funds or property of the insurer or has failed to remit to the insurer funds due it promptly upon demand or has been terminated for insolvency, abandonment, gross and willful misconduct or has had his license suspended or revoked.

(d) Subsequent to the twelve-month period after notice of termination given to an agent, an insurer shall not cancel or refuse to renew existing policies written through the terminated agent without offering each such insured coverage on a direct basis or offering to refer the insured to one or more new agents in the event the terminated agent could not find a suitable insurer acceptable to the policyholder for such business. Such offer need not be made if the insurer could have cancelled or nonrenewed the policy had the agency relationship continued. If the insurer retains ownership of the expirations of such policies, the insurer need not offer a new agent.

40 P.S. § 1008.3(c), (d).

The Insurance Department cited Aetna in the market conduct report for failing to send notices of nonrenewal with offers to write insurance policies to policyholders of an agent who terminated the agency relationship with Aetna. The Insurance Department's position was that such notices were required under Section 3, even though the relevant subsec-

tions refer only to the duty of an insurer to send notices when the insurer terminates the agency relationship. Aetna disputed that Section 3 imposes any notice requirements on insurers when agents terminate their agency relationships.

The Insurance Commissioner made the following Conclusions of Law:

14. Act 78 requires insurers to continue coverage through another agency where the policyholders' agent terminates his or her agency agreement with Aetna.

15. Act 78 requires affirmative steps be taken by an insurer to nonrenew a policy unless the insured indicates by overt action that he desires the policy to be nonrenewed.

16. The termination of an agency contract by an agent does not constitute overt action by the insured indicating the insured wishes his policy to be nonrenewed.

17. Aetna's passive nonrenewal of policies of a terminated agency violations [sic] Act 78.

The Commonwealth Court held that the Insurance Commissioner's adjudication was improper insofar as it held that Aetna had violated Section 3 of Act 78 by failing to notify insureds upon termination of the agency relationship. Although it rejected the Insurance Commissioner's conclusion that the practice violated Section 3, the court sustained the Insurance Commissioner's cease and desist order "under her power to recommend and enforce business practices to protect policyholders."

It is undisputed that Section 3(c) and (d) of Act 78 does not impose any duty on an insurer when the agent terminates the agency relationship. The Insurance Department asserts that it would be an absurd result to find that Aetna must notify policyholders in accordance with Section 3(d) of Act 78 when Aetna terminates the contractual relationship with an agent, but need not provide such notice when the agent terminates the relationship with an insurer unless there is another insurer to write the policies.

█ We conclude that an insurer is not required to send notices of nonrenewal and offers of coverage to policyholders under Section 3 of Act 78 when an agent terminates the agency relationship. Section 3(c) and (d) may not be extended to apply to instances when the relationship is terminated by the agent. We are not persuaded that this is an absurd result. The potentially adverse impact on a policyholder of an agent's termination by an insurer is far more tangible than that which might result when an agent terminates the relationship.

For the reasons stated above, the Insurance Commissioner lacked the authority to order Aetna to cease and desist from using the HLPV list to nonrenew policies and from "passively nonrenewing policies" written through an agent who terminates the agency contract. The Commonwealth Court's order is reversed insofar as it affirmed the Insurance Commissioner's order dated January 10, 1991 in this regard.

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.