STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Petitioner

v.

INSURANCE DEPARTMENT,
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 9, 2011.

Decided April 15, 2011.

Robert E. Kelly, Jr., Harrisburg, for petitioner.

Jodi A. Frantz, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge McGINLEY.

This is an appeal from an Adjudication and Order of the Pennsylvania Insurance Commissioner (Commissioner), dated February 16, 2010, which reversed the determination issued by the Insurance Department of the Commonwealth of Pennsylvania (Department) which held that State Farm Mutual Insurance Company's (State Farm) nonrenewal of automobile

insurance did not violate Act 68,[1] the law governing nonrenewal of automobile insurance policies.

On April 9, 2009, State Farm issued a Notice of Cancellation to John B. Farley (Mr. Farley) and informed him that his private passenger automobile insurance policy would not be renewed because of the following accidents:

03/11/2009 Insured hit parked claimant. Property Damage—$394 Collision—$765

02/20/2009 Insured opened door into claimant.

Property Damage—$592

Notice of Cancellation (Notice), July 7, 2009, at 1.

Mr. Farley sought Departmental review of his nonrenewal and asserted he had "a good record with [State Farm], so far as driving safety is concerned." Notice at 2. On April 16, 2009, the Department issued an investigative report and concluded that State Farm's actions complied with Act 68 because:

Act 68 permits an insurance company to non-renew your policy for a variety of reasons, including two or more accidents under the policy during the past three years, if total damage payments exceed $1350, regardless of who was at fault in the accidents. Insurance companies may not rely upon certain types of accidents in terminating a policy....

During our review of your non-renewal, we determined that: the accidents of March 11, 2009 and February 20, 2009 would support non-renewal of the policy.

Department's Investigative Report, April 16, 2009, at 1.

Mr. Farley appealed the Department's decision. A hearing was held on August 27, 2009, in Pittsburgh, Pennsylvania, attended by Mr. Farley, assisted by counsel, and two witnesses for State Farm.

Jane Hong (Hong), an underwriting team manager for State Farm, testified that two claims were paid by State Farm for two automobile accidents, one which occurred February 20, 2009, and the other which occurred March 11, 2009. Notes of Testimony (N.T.), August 27, 2009, at 13–16; Reproduced Record (R.R.), at 12a–13a. State Farm presented copies of the nonrenewal notice and claim records to corroborate Hong's testimony. State Farm paid out $592.92 for the February claim and $1,159.68 for the March claim. N.T. at 15–16.[2]

Mr. Farley did not dispute the occurrence of the two incidents, or that State Farm paid out the respective amounts. However, he maintained that the February 20, 2009, accident should not have been

---

1.  Act of June 17, 1998, P.L. 464, No. 68 § 1, 40 P.S. §§ 991.2001–991.2013. This Act substantially reenacted the Automobile Insurance Act, Act of June 5, 1968, P.L. 140, No. 78, (formerly 40 P.S. §§ 1008.1–1008.11) (*repealed by* Act of June 17, 1998, P.L. 464, No. 68 § 3) (Act 78).

2.  James McDeemus (Mr. McDeemus), a Claim Representative for State Farm, testified concerning the cost of the February 2009 claim:

    **Mr. McDeemus:** ... [Y]ou'll see several things which makes this repair more than simply just touching up that spot. If you were to paint that section, you need to clear coat the entire panel. To clear coat the entire panel, if you look at the top, you see there's a cover; there's also a rail that runs along the top ridge of the cover. Those both need to be removed to clear coat it. We have the rear bumper, which would need to be removed to get clear coat behind it. You have the taillight which would need to be removed and then reinstalled afterwards to get the clear coat behind it. So though it looks like just a small nick, by industry standards on repairing, once you start actually figuring out what you need to do to repair the vehicle, the numbers begin to add up very quickly.

    N.T. at 43–44; R.R. at 20a.

**572**

considered an "accident" for nonrenewal purposes, but rather an "occurrence." N.T. at 26; R.R. at 16a. Regarding that claim, Mr. Farley testified that he parked his vehicle in the parking lot at his place of employment. N.T. 27–28, 31, 36; R.R. at 16a, 17a, 18a. As Mr. Farley exited his vehicle, his car door struck a coworker's parked truck above the wheel well. N.T. at 27–28; R.R. at 16a. Mr. Farley observed that the damage to the other vehicle was limited to a "small spot of chipped paint with no damage to the metal." N.T. at 27; R.R. at 16a. Mr. Farley reported the incident to State Farm, which ultimately compensated the coworker for the damage. N.T. at 29; R.R. at 16a.

On February 16, 2010, the Commissioner issued the Adjudication and Order (Order) and reversed the Department's decision:

> In the present case, the insured's vehicle was lawfully parked at the time of the February 20, 2009 accident and the accident should not have been used to nonrenew the policy. It makes no difference whether the insured was negligent while opening his car door, because an insured's fault with respect to accidents used for nonrenewal is immaterial. [*Musto v. Pennsylvania Insurance Department*, 683 A.2d 1325 (Pa.Cmwlth. 1996)]. The General Assembly in Act 68 chose to exclude accidents of particular types rather than excluding accidents where the insured is not at fault. *Perry v. Liberty Mutual Insurance Company*, 484 [485] A.2d 516 (Pa.Cmwlth.1984); *Komada v. Browne* [97 Pa.Cmwlth. 19], 508 A.2d 1284 (Pa.Cmwlth.1986)....
> Opening the door of a lawfully parked car in the face of an oncoming vehicle

which then strikes the door does not prevent that accident from being excluded from nonrenewal use. *Zito/Allstate*, PH89–06–08 (1989).... Mr. Farley's automobile was lawfully parked when he opened his door into the side of his coworker's vehicle. The resulting accident was excluded from use in a nonrenewal, meaning that the policy was nonrenewed based upon only one non-excluded accident.

> An insurer may not refuse to renew a policy of automobile insurance on the basis of one accident within the thirty-six (36) month period prior to the upcoming anniversary date of the policy. 40 P.S. § 991.2003(b). Therefore, the Commissioner finds that State Farm Mutual Automobile Insurance Company's nonrenewal of John B. Farley's automobile insurance policy violates Act 68.

Order, February 16, 2010 at 6–7.

**I. Whether The Exclusion For Parked Vehicles Contained In Section 2003(a)(13)(i) Of Act 68 Applies When Mr. Farley's Conduct Was Negligent And His Conduct Unquestionably Caused Damage To The Other Vehicle?[3]**

State Farm contends the Commissioner erred as a matter of law when he concluded Mr. Farley's negligence was irrelevant when the accident falls within the narrow exclusion contained in Section 2003(a)(13)(i) of Act 68.

Section 2003 (**Discrimination prohibited**) of Act 68, 40 P.S. § 991.2003, provides that an insurer may not cancel or refuse to write or renew a policy of automobile in-

---

**3.** This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Donegal Mutual Insurance Company v. Insurance Department*, 719 A.2d 825 (Pa.Cmwlth.1998).

surance for "[a]ny accident which occurred under the following circumstances:

(i) *automobile lawfully parked* (if the parked vehicle rolls from the parked position, then any such accident is charged to the person who parked the automobile);

(ii) the applicant, owner or other resident operator is reimbursed by or on behalf of a person who is responsible for the accident or has judgment against such person;

(iii) automobile is struck in the rear by another vehicle and the applicant or other resident operator has not been convicted of a moving traffic violation in connection with this accident;

(iv) operator of the other automobile involved in the accident was convicted of a moving traffic violation and the applicant or resident operator was not convicted of a moving traffic violation in connection with the accident;

(v) automobile operated by the applicant or any resident operator is struck by a "hit-and-run" vehicle if the accident is reported to the proper authority within twenty-four (24) hours by the applicant or resident operator;

(vi) accident involving damage by contact with animals or fowl;

(vii) accident involving physical damage, limited to and caused by flying gravel, missiles or falling objects;

(viii) accident occurring when using automobile in response to any emergency if the operator of the automobile at the time of the accident was a paid or volunteer member of any police or fire department, first aid squad or any law enforcement agency. This exception does not include an accident occurring after the automobile ceases to be used in response to such emergency; or

(ix) accidents which occurred more than thirty-six (36) months prior to the later

of the inception of the insurance policy or the upcoming anniversary date of the policy.

(b) An insurer may not cancel or refuse to renew a policy of automobile insurance on the basis of one accident within the thirty-six (36) month period prior to the upcoming anniversary date of the policy.

In *Phillips v. Insurance Commissioner*, 980 A.2d 687, 689 (Pa.Cmwlth.2009), this Court reiterated the proper allocation of the burden of proof between the insurer and the insured pursuant to Act 68:

The insurer bears the bears the burden of proving that it complied with Act 68. *The insurer must establish that two accidents occurred within a thirty-six month period.* McDonnell v. Insurance Department, 94 Pa.Cmwlth. 381, 503 A.2d 1042 (1986). In addition, the insurer must make payments in excess of $1,150.00 as a result of the accidents. *See* 75 Pa.C.S. § 1799.3. Once the insurer shoulders this burden, the burden shifts to the insured to establish that there are circumstances which warrant exclusion from nonrenewal. *Kramer v. Department of Insurance,* 654 A.2d 203 (Pa.Cmwlth.1995).

Here, State Farm established that there were two accidents in a thirty-six month period which required it to pay out more than the threshold amount of $1,150.00.

However, the Department counters that Mr. Farley satisfied his burden because the plain language of Section 2003 of Act 68, 40 P.S. § 991.2003(a)(13)(i), precluded State Farm from considering Mr. Farley's February 20, 2009, accident for nonrenewal purposes because Mr. Farley's vehicle was "lawfully parked" at the time his car door struck his co-worker's car.

In *Musto v. Pennsylvania Insurance Department,* 683 A.2d 1325 (Pa.Cmwlth.

1996), Aetna informed Janice and Joseph Musto (Musto) that Musto's automobile insurance policy would not be renewed because of a "February 1992 speeding violation, a September 1992 total collision claim, and a November 1993 property damage claim." *Id.* at 1326. After a hearing, the Commissioner concluded that "Musto failed to demonstrate that either accident fell within one of Act 78's [4] exclusions that prohibit an insurer from refusing to renew a policy based on certain types of accidents." *Id.* at 1326. The Commissioner concluded that Aetna's nonrenewal of Musto's policy did not violate Act 68.

On appeal Musto argued among other things that "the renewal was improper because the insured [Musto] was not at fault in one of the two accidents." *Id.* at 1326. This Court noted:

> Section 3 of Act 78 states, in pertinent part, that no insurer shall refuse to renew a policy of automobile insurance for accidents that occurred more than 36 months prior to the later of the inception of the policy or the upcoming anniversary date. 40 P.S. § 1008.3(a)(13)(ix). Neither shall an insurer refuse to renew on the basis of one accident within the 36–month period prior to the upcoming anniversary date. 40 P.S. § 1008.3(b). *This section makes no broad exception for accidents in which the insured was involved, but for which the insured believes he or she was not at fault. Komada v. Browne,* 97 Pa.Cmwlth. 19, 508 A.2d 1284 (1986). *Even accidents in which blame could not be reasonably placed on the insured may be considered in the insurer's decision not to renew. Hallowell v. Insurance Department,* 105 Pa.Cmwlth. 143,

523 A.2d 826 (1987), petition for allowance of appeal denied sub nom. *State Farm Mutual Automobile Insurance Company v. Department of Insurance,* 517 Pa. 619, 538 A.2d 501 (1988). *Accordingly, Aetna was permitted to consider both of the accidents cited in the notice of nonrenewal regardless of whether Musto was at fault.* (emphasis added).

*Id.* at 1326.

Here, the rationale enunciated in *Musto* supported the Commissioner's determination that "fault is immaterial" when considering whether the accident falls within one of the nine exceptions under Section 2003(a)(13) of Act 68, 40 P.S. § 991.2003(a)(13). The query before this Court is whether, as the Commissioner determined, Mr. Farley's car was legally parked when his car door struck another vehicle. Act 68 does not define the term "parked" and there is no case law to provide guidance on this issue. However, the Commissioner has addressed a similar circumstance in prior decisions:

> The only requirement in the statute is that the automobile be lawfully parked. It does *not* require that the insured's vehicle must be struck, nor does it require that the insured be free of fault other than by securing the parked vehicle against rolling. This contrasts with other exclusions (rear-end collision and hit-and-run accidents) where the statutes require that the insured vehicle be "struck" by another vehicle for the accident to be excluded. 40 P.S. § 991.2003(a)(13)(iii) and (v).
>
> The plain language of the statute has not been negated by adjudications interpreting it. It is true that prior Commis-

---

4. Act 68 contains essentially the same restrictions on termination of automobile insurance policies previously contained in Act 78.

sioner adjudications made findings that the insured's automobile door was struck by an oncoming vehicle, but no adjudication has held that the insured must be blameless for the exclusion to apply. To the contrary, in *Suder/North River*, PH89–06–06 (1989), the insured opened the door in the face of an oncoming vehicle and was adjudicated as liable to the other driver at arbitration. *Nonetheless, the Commissioner held that "[b]ecause the insured's vehicle was lawfully parked at the time of the accident, it is excluded from consideration under Act 78."* Slip op. at 8. In similar circumstances, in *Zito/Allstate*, PH89–06–08 (1989), the *accident was excluded because "it is equally clear that insured's vehicle was lawfully parked* on September 1, 1988 when the collision between insured's passenger door and the other vehicle occurred." Slip op. at 7 (emphasis in original). The exclusion in both cases hinged on the insured's vehicle being lawfully parked and thus coming within the language of the statute, and not upon whether the insured's door struck the other vehicle, was struck by the other vehicle, or both.

Order Denying Reconsideration, March 16, 2010, at 3–4.

■ "An administrative agency's interpretation of a statute for which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous." *Popowsky v. Pennsylvania Public Utility*, 550 Pa. 449, 706 A.2d 1197 (1997), quoting *Alpha Auto Sales v. Department of State*, 537 Pa. 353, 644 A.2d 153 (1994). Because Mr. Farley's car was legally parked at the time of the

accident the record accident fell within Section 2003(a)(13)(i) of Act 68. State Farm was precluded from considering the February 20, 2009, accident when it refused to renew his insurance.

Accordingly, the decision of the Commissioner is affirmed.

### *ORDER*

AND NOW, this 15th day of April, 2011, the decision of the Commissioner is affirmed.

DISSENTING OPINION BY Judge BROBSON.

This case is less about an agency's interpretation of a statute and more about an interpretation of this Court's precedent interpreting that statute. Because the Pennsylvania Insurance Commissioner (Commissioner) and the majority misread and thus misapply this Court's precedent, I respectfully dissent.

At issue in this case is the propriety of the decision by Petitioner State Farm Mutual Automobile Insurance Company (State Farm) not to renew (or to nonrenew) the automobile insurance policy of John B. Farley (Farley). Pennsylvania has long had a regulatory scheme that *prohibits* automobile insurance companies from cancelling, refusing to write, or refusing to renew insurance policies for certain reasons. Currently, and since 1998, this scheme is set forth in Section 2003 of the Insurance Company Law of 1921 (Company Law).[1] Prior to 1998, Section 3 of the Automobile Insurance Act (Act 78)[2] set forth the applicable restrictions. The schemes, however, are virtually identical in substance. If the automobile insurer's

---

1.  Act of May 17, 1921, P.L. 682, added by the Act of June 17, 1998, P.L. 464, 40 P.S. § 991.2003 (Act 68).

2.  Act of June 5, 1968, P.L. 140, *as amended*, 40 P.S. §§ 1008.1–1008.11 (repealed). Act 68 repealed Act 78, but it also substantially reenacted the provisions of Act 78 as part of the Company Law.

reason(s) for nonrenewal are *not* prohibited, then the nonrenewal decision does not violate the law. *See Aetna Cas. & Surety Co. v. Commonwealth, Ins. Dep't,* 536 Pa. 105, 116–17, 638 A.2d 194, 199 (1994). As the Pennsylvania Supreme Court opined in *Aetna:*

> Section 3 is a definitive, inclusive statement of the reasons forbidden to be used by an insurer to cancel or to refuse to write or renew an automobile insurance policy under Act 78.... Section 3 may be subject to expansion by the Legislature, but not by the Insurance Department or the judiciary.

*Id.*[3]

One of the reasons an automobile insurer may choose to cancel, to refuse to write, or to nonrenew an insurance policy is adverse claims history. To protect the consumer in these circumstances, the General Assembly has placed restrictions on an insurer's ability to use adverse claims history in its underwriting decisions. Specifically, automobile insurers are not allowed to cancel or nonrenew a policy based on only one (1) accident within the thirty-six (36) month period preceding the policy anniversary date. Section 2003(b) of the Company Law. In addition, when choosing to write, cancel, or nonrenew automobile insurance policies, insurers may not consider *old* accidents—*i.e.,* "accidents which occurred more than thirty-six (36) months prior to the later of the inception of the insurance policy or the upcoming anniversary date of the policy." Section

2003(a)(ix) of the Company Law.[4] Finally, the General Assembly included in the law a list of eight (8) accidents that automobile insurers *may not* consider when choosing to write, cancel, or nonrenew automobile insurance policies (Excepted Accidents). Section 2003(a)(i)-(viii) of the Company Law.

Both the Commissioner and the majority rely primarily on this Court's decision in *Musto* to support their contention that the accident at issue in this case—Farley's hitting an adjacent parked car with his car door while Farley's car was "lawfully parked"—is an Excepted Accident that State Farm could not consider in its decision to nonrenew Farley's policy. In *Musto,* Aetna chose to nonrenew the automobile insurance policy of Janice and Joseph Musto (Musto) because Musto "was involved in two or more accidents within a designated 36-month period." *Musto,* 683 A.2d at 1326. Because Aetna demonstrated that the accidents occurred, the burden shifted to Musto "to demonstrate that either accident fell within one of [the] exclusions that prohibit an insurer from refusing to renew a policy based on certain types of accidents." *Id.* The Commissioner concluded that Musto failed to establish that one of the accidents fell within the statutory exclusions. Thus, the Commissioner concluded that Aetna's decision to nonrenew complied with the law.

On appeal to this Court, Musto raised two issues, only one of which is relevant here. Musto argued that one of the acci-

---

**3.** In *Aetna Casualty,* the Commissioner claimed that the automobile insurer's practice of nonrenewing policies for vehicles contained on a list of "high loss potential vehicles" violated Section 3 of Act 78. Our Supreme Court rejected this argument, noting that such a reason for nonrenewing automobile insurance policies was not expressly prohibited under Section 3 of Act 78.

**4.** The combination of these two statutory restrictions prompted this Court to characterize imprecisely the restrictions as *"permit[ting]* an insurer to refuse to renew an automobile policy when the insured was involved in two or more accidents within a designated 36-month period." *Musto v. Pa. Ins. Dep't,* 683 A.2d 1325, 1326 (Pa.Cmwlth.1996) (emphasis added).

dents in question should not count toward nonrenewal because Musto was not at fault. In other words, Musto *did not* attempt to argue that his accident fell within the list of Excepted Accidents; rather, he attempted to argue that because he was not at fault for the accident, it should not be held against him from an underwriting perspective. We rejected this argument, explaining the statutory scheme:

> This section makes *no broad exception* for accidents in which the insured was involved, but for which the insured believes he or she was not at fault. Even accidents in which blame could not be reasonably placed on the insured *may* be considered in the insurer's decision not to renew. Accordingly, Aetna was permitted to consider both of the accidents cited in the notice of nonrenewal regardless of whether Musto was at fault.

*Musto*, 683 A.2d at 1326 (emphasis added).

*Musto* followed *Komada v. Browne*, 97 Pa.Cmwlth. 19, 508 A.2d 1284 (1986). In *Komada*, an insurer also attempted to argue that the accidents prompting her insurer's nonrenewal decision should fall within the list of Excepted Accidents because the accidents were not her fault. As in *Musto*, the insurer in *Komada* attempted to argue in favor of a broad, general exception not expressly set forth in the law. And, as the Court did ten years later in *Musto*, we rejected the argument:

> Petitioner argues that she should fall within Section 3(a)(13) because the accidents were not her "fault," a term for which there is no definition in the Act. This argument misconstrues Section 3(a)(13) of the Act. Section 3(a)(13) sets forth a detailed list of specific types of accidents which cannot be used by an insurer to justify an automobile policy termination. *While each of those accidents deals with a circumstance in which blame could not reasonably be placed upon an insured,* this list does not establish a broad exception for all accidents that an insured might consider not his "fault."

*Komada*, 508 A.2d at 1286 (emphasis added).

Unlike the insured in *Musto* and *Komada*, Farley does not argue that the accident that prompted State Farm to nonrenew his policy was not his fault and, thus, should be excepted from State Farm's consideration under Section 2003 of the Company Law. Had he done so, we would be compelled to conclude, as we did in those cases, that there is "no broad exception" in the statute for accidents where the insured is not at fault.

Instead, Farley argues that his accident falls within the first category of Excepted Accidents—"automobile lawfully parked (if the parked vehicle rolls from the parked position, then any such accident is charged to the person who parked the automobile)." It is undisputed that Farley's car was lawfully parked when the accident occurred. But it is also undisputed that the accident occurred when Farley opened up his car door, striking his coworker's parked vehicle. Thus, Farley has some culpability (or fault) for the damage to his coworker's car. The question before the Commissioner was whether that culpability *precluded* the accident from falling within the "automobile lawfully parked" exception.

The Commissioner ruled that it did not. In so doing, he misstated our holding in *Musto* as standing for the proposition that "an insured's fault with respect to accidents used for nonrenewal is immaterial." (Adjudication and Order, February 16, 2010, at 6.) This Court held nothing of the sort in *Musto*. As noted above, the Court in *Musto* held only that there was "no broad exception" for accidents where the

insured was not at fault. The Court did not rule, as the Commissioner and majority reason, that fault or culpability is irrelevant when considering whether an accident falls into one of the expressly stated exceptions in Section 2003. Indeed, such a leap in logic not only takes liberty with our decision in *Musto*, it conflicts with our holding in *Komada*, wherein we clearly held that each of the Excepted Accidents "deals with a circumstance in which *blame could not reasonably be placed upon an insured.*" *Komada*, 508 A.2d at 1286 (emphasis added).

Our interpretation of the Excepted Accidents in *Komada* is sound. Putting aside for a moment the "automobile lawfully parked" exception, each of the other Excepted Accidents presents a scenario in which "blame could not reasonably be placed upon an insured." They involve such circumstances where (a) another vehicle was involved and there is indicia that the driver of the other vehicle was at fault (exceptions 13(ii)-(v)); (b) the damage resulted from contact with animals or fowl (exception (vi)); and (c) the damage was "limited to and caused by flying gravel, missiles or falling objects" (exception 13(vii)). There is also an exception for accidents that occur in the course of using a vehicle to respond to an emergency where, at the time, the operator of the vehicle was a paid or volunteer first responder. (Exception 13(viii).) The General Assembly made a policy decision that such accidents should not be charged to the first responder. If, however, the accident occurred "after the automobile ceases to be used in response to such emergency," the exception no longer applies. Section 2003(a)(13)(ix) of the Company Law.

The exception at issue in this case excepts from an automobile insurer's consideration an accident that occurs under the circumstances of an "automobile lawfully parked (*if the parked vehicle rolls from the parked position, then any such accident is charged to the person who parked the automobile* )." Section 2003(a)(13)(i) of the Company Law (emphasis added). The parenthetical is a clear indication by the General Assembly that this exception, like the others, is intended to deal with circumstances where the accident should not be charged to the operator who parked the vehicle. For example, where, at the end of the workday, the insured returns to her lawfully parked vehicle only to find that there is an unexplained dent in her vehicle door, this exception would bar her insurer from using that accident as a basis for nonrenewing her policy. But where she returns to her vehicle to find that it had rolled from the parked position and crashed into another vehicle, the exception would not prevent the insurer from considering the accident.

Thus, culpability (or fault), was clearly in the General Assembly's mind when it created the list of Excepted Accidents in Act 78 and re-enacted the list as Section 2003(a)(13) of the Company Law. Indeed, it is difficult to fathom any reason why the General Assembly would choose to except from an automobile insurer's underwriting criteria any accident where the insured *is* culpable and there are no extenuating circumstances or policy reasons to give the insured a pass. We thus should not read the "automobile lawfully parked" exception as giving an insured a pass where, while his vehicle is "lawfully parked," he acts (negligently or intentionally) in such a fashion as to cause damage to another vehicle or even, by the Commissioner's logic, another person.[5]

5. Considering the other categories of Excepted Accidents and the analysis above, I re-

spectfully submit that interpreting, as the Commissioner and the majority do, the "auto-

To summarize, the Commissioner misread and thus misapplied our ruling in *Musto*, and the majority makes the same error. As we noted in *Komada*, the Excepted Accidents set forth in Section 2003 of the Company Law are intended to address circumstances where fault cannot reasonably be placed on the insured. Here, the accident in question occurred *when* Farley opened up his vehicle door and struck a coworker's vehicle, not when his vehicle was merely "lawfully parked." Thus the "lawfully parked" exception does not apply, and State Farm's decision to nonrenew based, in part, on the accident in question did not violate Section 2003 of the Company Law. I would, therefore, reverse the Commissioner's Adjudication and Order in this case.

Judge McCULLOUGH joins in this Dissenting Opinion.

mobile lawfully parked" exception to exclude such accidents from an insurer's consideration leads to an absurd and unreasonable result, which the General Assembly could not have intended. *See* 1 Pa.C.S. § 1922(1) (providing for presumption in statutory construction that General Assembly "does not intend a result that is absurd, impossible of execution or unreasonable").