# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Tatiana Furman, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1852 C.D. 2014 |
| | : | Submitted: September 25, 2015 |
| Department of Aging, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  December 15, 2015**

This matter is a petition for review filed by Tatiana Furman (Petitioner) appealing an order of the Bureau of Hearings and Appeals (BHA) that held that she is ineligible for grandparent support benefits under the National Family Caregiver Support Program (NFCSP), 42 U.S.C. §§ 3030s-3030s-2.  For the reasons set forth below, we vacate and remand.

The NFCSP is a federally funded program that provides support services, including expense reimbursement, to family members providing care for elderly relatives and to grandparents and other relatives age 55 or older who are primary caregivers for a child no older than age 18 or a disabled child, where the "biological or adoptive parents are unable or unwilling to serve as the primary caregiver of the child."  42 U.S.C. §§ 3030s(a), 3030s-1.  (*See also* Certified Record Item (R. Item) 8, Hearing Transcript (H.T.) at 14-15, 20, 73, 87.)

Petitioner, a Russian citizen who is a resident of Montgomery County, is the biological grandmother of a minor child, born in Russia in 2004, whose biological mother died in 2012 and whose biological father is unknown. (R. Item 5, BHA Decision Findings of Fact (F.F.) ¶1; R. Item 3, Exs. A-3, A-5; R. Item 8, H.T. at 29-31, 96-97.) In May 2013, Petitioner, with her son-in-law's assistance, applied with the Montgomery County Office of Aging and Adult Services (County Agency) seeking grandparent support benefits under the NFCSP with respect to her care for the grandchild. (R. Item 5, BHA Decision F.F. ¶2, Analysis & Conclusion at 5; R. Item 8, H.T. at 29, 71-72.) Petitioner was 61 years old at the time of this application and therefore met the age eligibility requirement for NFCSP grandparent support benefits. (R. Item 5, BHA Decision F.F. ¶1a; R. Item 3, Exs. A-3, A-5; R. Item 8, H.T. at 46-47.)

In conjunction with this application, Petitioner's son-in-law provided the County Agency with an April 4, 2013 Russian civil registry record and his English translation, dated April 5, 2013, which bore the title "Adoption Certificate" and stated that the grandchild was "adopted" by Petitioner. (R. Item 5, BHA Decision F.F. ¶3; R. Item 8, H.T. at 74-76; R. Item 3, Ex. A-2.) Petitioner's son-in-law also provided to the County Agency a March 1, 2013 Russian court decision and his English translation, dated April 3, 2013, that described the proceeding concerning Petitioner and the grandchild on which the civil registry record was based as a "guardianship" proceeding and stated that "guardianship" of the grandchild was granted to Petitioner. (R. Item 5, BHA Decision F.F. ¶4; R. Item 8, H.T. at 76-82; R. Item 3, Exs. A-3, A-4.)

On May 30, 2013, the County Agency issued an adverse action notice denying Petitioner's request for grandparent support benefits on the grounds that Petitioner was an adoptive parent and that her status as an adoptive parent made

her ineligible under the NFCSP. (R. Item 5, BHA Decision F.F. ¶6; R. Item 3, Ex. C-1.) Petitioner filed an appeal to the County Agency for review of the denial, and the County Agency denied the appeal, again concluding that Petitioner was ineligible as the adoptive parent of her grandchild. (R. Item 5, BHA Decision F.F. ¶¶7-8; R. Item 3, Exs. C-1, C-2.) Subsequent to its decisions on Petitioner's application, the County Agency had the original Russian certificate and court decision translated by an outside agency, Language Services Associates (LSA). (R. Item 5, BHA Decision F.F. ¶¶5, 10; R. Item 8, H.T. at 79, 82-86.)[1] The LSA translation of the Russian court decision described the proceeding as a "petition for adoption" and stated the court granted and confirmed Petitioner's "adoption" of the grandchild. (R. Item 3, Ex. A-5.)

Petitioner timely appealed to the Department of Aging (Department), which on November 14, 2013 reversed the County Agency's decision and granted Petitioner grandparent support benefits. (R. Item 5, BHA Decision F.F. ¶¶9, 11; R. Item 3, Exs. C-3, C-4.) The County Agency requested a formal hearing appealing the determination that Petitioner was entitled to benefits, and a hearing was held on June 3, 2014 before a BHA administrative law judge (ALJ). (R. Item 5, BHA Decision F.F. ¶¶12, 14; R. Item 3, Ex. C-5.) Petitioner filed a formal petition to intervene in the County Agency's appeal, which was granted by the ALJ at the hearing. (R. Item 5, BHA Decision F.F. ¶¶13, 14c; R. Item 8, H.T. at 11-12.)

Attorneys for the Department and the County Agency appeared at the BHA hearing, but neither Petitioner, who does not speak English, nor her son-in-

---

[1] The Department's repeated assertions that the LSA translation was sought by BHA (Respondent's Br. at 7-10) misstate the record in this case. It is clear from both the evidence and the BHA decision that the LSA translation was obtained solely by the County Agency, and not by BHA. (R. Item 5, BHA Decision F.F. ¶5, Analysis & Conclusion at 6 & n.3; R. Item 8, H.T. at 79, 82-85.)

law appeared. (R. Item 5, BHA Decision at 1, F.F. ¶¶14a, 14b; R. Item 8, H.T. at 5-8, 11-12.) The ALJ recited at the hearing that Petitioner had been sent notice of the hearing and that her son-in-law had been advised that he could not represent Petitioner at the hearing (R. Item 8, H.T. at 11-12); however, no documents appear in the certified record setting forth these or any other communications concerning notification of the hearing or who could attend the hearing. The only witnesses at the hearing were two Department employees, who testified concerning the decision that Petitioner was eligible for grandparent support benefits, and a County Agency representative, who testified concerning the reasons for its rejection of Petitioner's application.

At the hearing, the translations of the Russian documents by Petitioner's son-in-law and by LSA were introduced in evidence, along with a copy of the original Russian documents. (R. Item 8, H.T. at 74-76, 80-83, 91-93; R. Item 3, Exs. A-2, A-3, A-4, A-5.) The translations by Petitioner's son-in-law each bore a statement signed by him declaring that he is "fully competent and fluent in English and Russian languages" and that the translation was "a true translation of the original document." (R. Item 3, Exs. A-2, A-3.) With respect to the LSA translation, the Department and the County Agency entered into and introduced in evidence the following stipulation:

> 1. Cornee van der Linden is employed as a Language Services Associate Representative for Languages [*sic*] Services Associates.
>
> 2. If called to testify she would testify that in this matter, she received Case No. 2-10162/2012 [the number appearing on the March 1, 2013 Russian court decision] a Russian document to be translated to English.
>
> 3. She would further testify that the document was a petition for adoption and was translated from Russian to English by

qualified independent linguists contracted by Language Services Associates.

4. Finally she would testify that the translation provided was a true and accurate translation from Russian to English.

(R. Item 3, Ex. BHA-1; R. Item 8, H.T. at 12-14.) Although the correct translation of the Russian documents was a key disputed issue, no witness involved in the translations or fluent in Russian testified at the hearing, and no evidence was introduced as to the reasons for the differences in translation or the meaning or legal effect of the terms in the Russian documents.

Following the hearing, the ALJ issued a recommended adjudication sustaining the County Agency's appeal, vacating the Department's notice granting Petitioner grandparent support benefits, and ordering that the County Agency's denial of benefits be reinstated. (R. Item 5, BHA Decision.) On August 22, 2014, BHA issued a final administrative action order affirming the ALJ's adjudication as its decision. (*Id.* at 1.) BHA found the LSA translation to be the more credible translation of the Russian documents, and concluded, based on the LSA translation, that Petitioner was the adoptive mother of her grandchild. (R. Item 5, BHA Decision Analysis & Conclusion at 6-7.) BHA held that a grandparent who has adopted her grandchild is ineligible for benefits under the NFCSP and that Petitioner was therefore ineligible for grandparent support benefits. (*Id.* at 7.)

Petitioner timely appealed BHA's decision to this Court.[2] Petitioner challenges both BHA's interpretation of the NFCSP and its determination that she is the adoptive mother of her grandchild.[3]

---

[2] This Court's review of the BHA decision is limited to determining whether an error of law was committed, whether constitutional rights were violated, and whether BHA's findings of fact are supported by substantial evidence. *Bucks County Children & Youth Social Services Agency v. Department of Public Welfare*, 977 A.2d 1254, 1256 (Pa. Cmwlth. 2009).

5

The NFCSP does not expressly state that grandparents are excluded from benefits if they have also adopted the grandchild for whom they are the primary caregiver. The NFCSP provides benefits "for grandparents or older individuals who are relative caregivers." 42 U.S.C. § 3030s-1(a)(2). The NFCSP defines "grandparent or older individual who is a relative caregiver" as

> a grandparent or stepgrandparent of a child, or a relative of a child by blood, marriage, or adoption, who is 55 years of age or older and--
>
> (A) lives with the child;
>
> (B) is the primary caregiver of the child because the biological or adoptive parents are unable or unwilling to serve as the primary caregiver of the child; and
>
> (C) has a legal relationship to the child, as such legal custody or guardianship, or is raising the child informally.

42 U.S.C. § 3030s(a)(2). The requirement that "the biological or adoptive parents are unable or unwilling to serve as the primary caregiver" can be read as requiring that no legally responsible parent is available and willing to care for the child, as BHA held and the Department argues. However, because the statute uses the disjunctive "or," rather than requiring that no biological or adoptive parent be able to care for child, the statute can equally be interpreted as requiring only that the grandparent undertook to care for the child because the parent to whom he or she is related was unable or unwilling to care for the child, with the reference to "adoptive parents" addressing the situation where the grandparent relationship is due to an adoption. Under the latter interpretation, Petitioner would satisfy the

---

[3] Petitioner also argues that she was not given proper notice of her right to participate in the ALJ hearing. In light of our decision that the matter must be reversed and remanded, Petitioner will have the opportunity to participate and be heard before any ruling adverse to her is issued. We therefore do not address this argument.

6

NFCSP's requirement that "the biological <u>or</u> adoptive parents are unable or unwilling to serve as the primary caregiver," even if she has adopted her grandchild, as she is his primary caregiver because his biological parents are unavailable and cannot care for him. 42 U.S.C. § 3030s(a)(2) (emphasis added).

There does not appear to be any legislative history or regulatory interpretation resolving this ambiguity in the NFCSP's grandparent provisions. There are no federal regulations under the NFCSP and Pennsylvania's family caregiver regulations do not apply to the grandparent support program. (R. Item 8, H.T. at 14-16, 93-94.) The federal Administration on Aging (AOA) has issued a policy statement that, without elaboration, describes the persons eligible for the grandparent support program as "[g]randparents and other relatives (not parents) 55 years of age and older." (R. Item 3, Ex. BHA-2 at 3, R. Item 8, H.T. at 94-96.) This language is likewise ambiguous. The Department argues that this prescribes that grandparents and other relatives are eligible only if they are not also parents. This language, however, may be intended instead to merely mean "grandparents and other non-parent relatives," with the phrase "not parents" modifying only the phrase "other relatives," as parents would ordinarily fall within the term "relatives" unless excluded. This latter interpretation is supported by other language in the AOA policy statement describing the eligible persons under the NFCSP as including "[g]randparents and relative caregivers, age 55 years or older, of children no older than age 18" and "[r]elative caregivers, age 55 years or older, of a disabled adult 19-59 years of age (not including natural or adoptive parents)." (R. Item 3, Ex. BHA-2 at 2.)

No other evidence showing the federal government's interpretation of the grandparent provisions of the NFCSP was before BHA or is before this Court, nor was any evidence introduced setting forth an interpretation by the Department.

7

While there was testimony at the ALJ hearing that there was an email communication from AOA allegedly confirming that adoption made Petitioner ineligible, the County Agency and the Department chose not to introduce that document in evidence. (R. Item 8, H.T. at 88-90.) The only administrative interpretation of the statutory language before us is BHA's ruling in its decision. In construing an ambiguous statute, the courts must accord great deference to an interpretation by an agency charged with enforcement of the statute. *Banfield v. Cortes*, 110 A.3d 155, 174 (Pa. 2015); *Alpha Auto Sales, Inc. v. Department of State, Bureau of Professional & Occupational Affairs*, 644 A.2d 153, 155 (Pa. 1994); *Packer v. Bureau of Professional & Occupational Affairs*, 99 A.3d 965, 969 (Pa. Cmwlth. 2014); *see also* 1 Pa. C.S. § 1921(c)(8). BHA, however, is not an agency charged with enforcement of the NFCSP, as it is a part of the Department of Human Services, a different agency not responsible for administering the statute. BHA's interpretation of the NFCSP's language is therefore not entitled to deference. The fact that the Department has defended BHA's interpretation in its brief in this appeal does not constitute an interpretation by the Department entitled to the deference under the principles of statutory construction. *Perrotta v. Department of Transportation, Bureau of Driver Licensing,* 110 A.3d 255, 259-60 (Pa. Cmwlth. 2015); *Packer*, 99 A.3d at 970-71.

The Department argues that the NFCSP should be read to exclude grandparent caregivers who adopt their grandchildren because federal programs "generally prohibit legally responsible relatives, such as parents, from becoming paid caregivers." (Respondent's Br. at 14 (emphasis omitted), citing Pa. General Assembly Joint Legislative Budget and Finance Committee Report, Family Caregivers in Home and Community-Based Waiver Programs (Legislative

8

Committee Report)[4] at 29.) That argument likewise fails. The restrictions on legally responsible family members as paid caregivers do not apply to the NFCSP, as the NFCSP benefits are support services and reimbursement to family members for expenses, not payment to the family member for providing care. (Legislative Committee Report at 22; R. Item 8, H.T. at 20; R. Item 3, Ex. BHA-2.) Indeed, the NFCSP provides benefits to legally responsible relatives, such as spouses. (Legislative Committee Report at 22-23; R. Item 3, Ex. BHA-2.)

We need not construe the NFCSP on this inadequate record, however, because BHA's determination that Petitioner was the adoptive parent of her grandson is not supported by substantial competent evidence. Pennsylvania's Adoption Act provides a procedure for recognition of adoptions that have occurred under the laws of foreign countries under which a Pennsylvania certificate of adoption is issued following a court determination that the foreign decree constitutes a full and final adoption. 23 Pa. C.S. § 2908; Pa. O.C. Rule 15.8. Such a certificate of adoption constitutes proof of the adoption "in any legal proceedings in this Commonwealth." 23 Pa. C.S. § 2907. No evidence was introduced at the ALJ hearing as to whether the Russian court decision or civil registry record was registered as a foreign adoption or whether a certificate of adoption was issued under the Adoption Act.

Nor was any other competent evidence introduced from which BHA could determine whether the Russian documents legally constituted an adoption. No evidence was presented as to the nature of the Russian proceeding and court decision other than the competing and conflicting written translations. To the extent that the translations conflicted, there was no stipulation by all of the parties

---

[4] This document appears at http://lbfc.legis.state.pa.us/Resources/Documents/Reports/527.pdf (last visited November 18, 2015).

that either translation was a valid translation of the Russian documents. The only evidence supporting the correctness of the translations was hearsay. Petitioner's son-in-law did not testify concerning his translation and no testimony was offered of a witness shown to be fluent in the Russian language that the LSA translation was a correct translation. While the County Agency and the Department entered into a stipulation as to the testimony of an LSA representative, that stipulation was not agreed to by Petitioner and therefore was not binding on her. Moreover, the stipulated testimony concerning the accuracy of the LSA translation was itself purely hearsay. The stipulation did <u>not</u> state that the witness would testify that <u>she</u> was fluent in Russian or had read or translated the documents. Rather it stated only the witness would testify that other unidentified individuals under contract with LSA translated the documents and that those other unidentified individuals were "qualified independent linguists." (R. Item 3, Ex. BHA-1 ¶3.)

Hearsay evidence, even if admitted without objection, is not substantial evidence and cannot support a finding of fact in this administrative proceeding unless it is corroborated by other competent evidence in the record. *Chambers v. Department of Public Welfare*, 19 A.3d 1, 4-6 (Pa. Cmwlth. 2011); *Bucks County Children & Youth Social Services Agency v. Department of Public Welfare*, 977 A.2d 1254, 1256 (Pa. Cmwlth. 2009). "[F]actual findings will not stand if they are based solely on hearsay." *Chambers*, 19 A.3d at 4. The validity of the LSA translation was not corroborated by any non-hearsay evidence. BHA's determination that Petitioner was the adoptive parent of her grandchild based on that translation is therefore not supported by substantial evidence and must be reversed.

For the reasons set forth above, the decision of BHA ruling that Petitioner is ineligible for benefits cannot stand.[5]   Ordinarily, reversal for insufficient evidence would result in the reinstatement of the underlying decision that BHA had reversed.   However, statements by the Department at the ALJ hearing concerning its stipulation and the issues in dispute may have led the County Agency to believe both that it did not need to introduce further evidence that the LSA translation was a correct translation and that the construction of the NFCSP was not in dispute.  (R. Item 8, H.T. at 12-14, 101-04.)  Accordingly, we vacate the BHA decision and remand this matter to BHA for a new hearing before an ALJ at which all parties, Petitioner, the County Agency and the Department, may introduce additional evidence as to whether Petitioner is the adoptive mother of the grandchild at issue and whether there is any policy or other interpretation by the federal AOA and/or the Department concerning the effect of an adoption on whether an otherwise eligible grandparent may receive benefits under the NFCSP.

**JAMES GARDNER COLINS, Senior Judge**

---

[5] Subsequent to the briefing in this appeal, Petitioner filed an application to place the entire record and file in this matter under seal on the ground that the record contains confidential personal identifying information concerning Petitioner and her grandchild.  The Department has not opposed this application.  The record filed by BHA contains documents concerning the custody or adoption of a minor child that are not public records.  We therefore grant Petitioner's application to seal insofar as it seeks the sealing of the BHA record.  Petitioner, however, has not identified any specific documents in or portions of this Court's file, other than the BHA record, that are protected from public access.  We therefore deny Petitioner's application to seal this Court's file as a whole, without prejudice to her right to move to seal specific documents or portions of documents that contain confidential personal information.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tatiana Furman, :
:
Petitioner :
:
v. : No. 1852 C.D. 2014
:
Department of Aging, :
:
Respondent :

# O R D E R

AND NOW, this 15th day of December, 2015, the order of the Bureau of Hearings and Appeals (BHA) in the above-captioned matter is VACATED. This case is REMANDED to BHA with instructions to hold a new hearing before an administrative law judge in this matter at which all parties, including Petitioner as intervenor, may introduce evidence as to whether Petitioner is the adoptive mother of the grandchild at issue and evidence concerning the interpretation of the National Family Caregiver Support Program by the agencies charged with enforcement and administration of that statute. Petitioner's application to seal the record and file in this matter is GRANTED insofar as it seeks the sealing of the agency record. The Chief Clerk is directed to place the BHA record electronically filed with this Court on November 7, 2014 under seal. Petitioner's application to seal is DENIED without prejudice to the extent that it seeks the sealing of this Court's docket and file other than the BHA record.

Jurisdiction relinquished.

_____
**JAMES GARDNER COLINS, Senior Judge**